THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW WILDMAN, on his own behalf and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE PHILADELPHIA INQUIRER, LLC., <br><br> Defendant. | Case No. 2:26-cv-02162-LK <br><br> **MOTION TO DISMISS** <br><br> **NOTE ON MOTION CALENDAR: JULY 27, 2026** <br><br> **ORAL ARGUMENT REQUESTED** |

MOTION TO DISMISS
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
FAX:206.223.7107

**Table of Contents**

| | | Page |
|---|---|---|
| I. | INTRODUCTION .................................................................................... | 1 |
| II. | BACKGROUND ..................................................................................... | 3 |
| III. | ANALYSIS .............................................................................................. | 4 |
| | A. Legal Standard .................................................................................... | 4 |
| | B. The Court does not have general or specific personal jurisdiction over The Philadelphia Inquirer.................................................................... | 5 |
| | C. CAN-SPAM Preempts Plaintiff's CEMA Claims and Requires Dismissal. .......... | 8 |
| | i. CAN-SPAM Exempts Only State Law Actions Based on Claims that Sound in Fraud. .................................................................. | 9 |
| | ii. Plaintiff's CEMA Claims Do Not Fall Into the CAN-SPAM Fraud Exception. ................................................................................ | 11 |
| | 1. Plaintiff's Complaint Fails to Plausibly or Particularly Allege Materiality. ........................................... | 11 |
| | 2. Plaintiff's Complaint Does Not Allege Reliance.......................... | 14 |
| | 3. Plaintiff's Complaint Does Not Allege that Plaintiff or Class Members Suffered Any Fraud-Based Injury....................... | 14 |
| | 4. Plaintiff Does Not Sufficiently Allege that The Philadelphia Inquirer's Advertising Email Subject Lines Were False or Misleading. ............................................. | 15 |
| | D. Plaintiff fails to state a claim under CEMA because he does not allege The Philadelphia Inquirer knew Plaintiff was a Washington resident. ........................ | 17 |
| | E. Plaintiff Cannot Recover Damages Under CEMA. ............................................. | 20 |
| | F. Plaintiff's Claim for Treble Damages under the Consumer Protection Act Must be Dismissed because Plaintiff Has Not Alleged Actual Damages............. | 21 |
| | G. The Damages Award Plaintiff Seeks is Unconstitutionally Punitive. .................. | 22 |
| | H. The Court Should Dismiss the Case with Prejudice Because Amendment is Futile................................................................................ | 23 |
| IV. | CONCLUSION........................................................................................ | 23 |

MOTION TO DISMISS – i
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
FAX:206.223.7107

## I.   **INTRODUCTION**

Counsel for The Philadelphia Inquirer, LLC ("The Philadelphia Inquirer") certifies that they conferred on June 25, 2026 at 9:30AM via telephone with counsel for Plaintiff Matthew Wildman ("Plaintiff") regarding the subjects addressed in this Motion, but were unable to resolve this dispute.

Plaintiff filed a Complaint asserting a sweeping class action against The Philadelphia Inquirer, a regional newspaper based in Philadelphia, Pennsylvania, based on promotional emails he allegedly received. Yet, he does not claim that he relied on those emails or made a purchase as a result of any alleged misrepresentations in those emails. Indeed, he does not allege any damages whatsoever. Instead, Plaintiff contends that because the subject lines of the emails sitting in his inbox were purportedly misleading, they violate Washington's Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010–.110, and thus constitute a per se violation of the Consumer Protection Act ("CPA"), RCW 19.86.010–.920, despite not alleging to have seen the emails in question, relied upon them, made any purchase, or suffered any injury whatsoever. Plaintiff seeks to recover $500 per email received, trebled to $1,500 under the CPA, for an entire class of Washington consumers over four years. But CEMA does not transform a no-injury advertising claim into a $1,500-per-email penalty simply because the challenged statement appeared in an email subject line.

Furthermore, the Court lacks personal jurisdiction over The Philadelphia Inquirer. The only alleged connections between The Philadelphia Inquirer and Washington in the Complaint are the nine marketing emails the newspaper purportedly sent to an email address of a Washington resident. Plaintiff does not adequately allege that the emails were purposefully directed at Washington state, as he must; they have nothing to do with Washington and there are no allegations that The Philadelphia Inquirer knew it was directing emails to a Washington resident. These few emails are not sufficient to haul The Philadelphia Inquirer to court in Washington state.

Even if the Court does have personal jurisdiction, Plaintiff's CEMA claim is preempted by federal law. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003

MOTION TO DISMISS – 1
CASE NO. 2:26-CV-02162-LK

BALLARD SPAHR LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
FAX:206.223.7107

("CAN-SPAM"), 15 U.S.C. §§ 7701–7713, regulates commercial email at the federal level and explicitly preempts conflicting state laws like CEMA. Plaintiff's strict liability theory is precisely the type of claim CAN-SPAM displaces. The Ninth Circuit has held that only state-law claims sounding in traditional torts, such as fraud, survive CAN-SPAM preemption. But Plaintiff does not advance a fraud claim or any other tort claim. To state a CEMA violation that sounds in fraud or misrepresentation Plaintiff **must** establish materiality, reliance, injury, and that the email subject lines were false or misleading. The Complaint does not meet any of these elements, nor could it because Plaintiff does not allege that he made any purchase, relied upon any statement by The Philadelphia Inquirer, or even saw the emails when they were allegedly sent.

Even if Plaintiff's CEMA claims are not preempted by federal law, he has failed to state a claim for relief under CEMA because he failed to allege that The Philadelphia Inquirer knew or had reason to know that his email address was owned by a Washington resident. Indeed, Plaintiff merely speculates that technology exists that could possibly connect an email address to a location. These vague allegations are insufficient to allege knowledge under CEMA. Additionally, Plaintiff cannot recover damages under CEMA, because statutory damages under CEMA are only available for direct claims brought under RCW 19.190.080 for phishing. To the extent that Plaintiff seeks statutory damages under CEMA, those claims should be dismissed. In addition, Plaintiff's request for trebled statutory damages under the CPA should be dismissed because only actual damages may be trebled.

Finally, the financial stakes demand early and careful scrutiny of Plaintiff's zero-injury claims. Plaintiff seeks to impose a punitive measure of damages that would violate the U.S. Constitution, especially in light of Plaintiff and the putative class's lack of injury.

Plaintiff seeks to drag a Pennsylvania newspaper into court in Washington because his email address was allegedly on a marketing list. Plaintiff then seeks to impose a strict liability standard on this out-of-state newspaper for its advertising campaign even though Plaintiff did not allege that he read or engaged with the emails at all. The Court should dismiss Plaintiff's complaint in its entirety, with prejudice.

MOTION TO DISMISS – 2
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

## II.    BACKGROUND

Plaintiff alleges that he is a Washington resident who received marketing emails from The Philadelphia Inquirer between 2023 and 2025. Compl. ¶¶ 10, 92–102. Plaintiff alleges that he received emails with misleading subject lines on September 4, 2023, September 19, 2023, January 23, 2024, January 24, 2024, February 20, 2024, February 21, 2024, March 12, 2024, July 16, 2024, and July 10, 2025. *Id.* ¶¶ 50, 56, 61, 64, 67, 70, 74, 77, 80, 94–102. Plaintiff alleges the subject lines of The Philadelphia Inquirer's emails falsely suggested that certain promotions would end a day earlier than they actually did. *See id.* ¶¶ 43–82, 104.

Plaintiff alleges that The Philadelphia Inquirer purportedly *must* know "where the recipients of its marketing emails are located" because there are allegedly various ways that the newspaper *could* potentially figure out what state an email address is located in. *Id.* ¶ 83. This is insufficient. Plaintiff does not allege that The Philadelphia Inquirer purposefully directed its conduct toward Washington in any way.

According to Plaintiff, such emails were designed to "create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." *Id.* ¶ 4; *see also id.* ¶¶ 5–6 (alleging The Philadelphia Inquirer sent "false notifications that the time to act—*i.e., purchase*—is short" and that The Philadelphia Inquirer's products "must be purchased *now*").

Notably, Plaintiff does not claim this alleged strategy worked on him, or anyone else. Plaintiff does not allege that he made a purchase that would not have otherwise been made—or any purchase from The Philadelphia Inquirer at all. Nor does he claim to have noticed or even read the challenged subject lines. In short, Plaintiff alleges only that The Philadelphia Inquirer sent emails regarding promotions on newspaper subscriptions that landed in his inbox. Nevertheless, despite asserting zero injuries whatsoever, Plaintiff seeks to proceed with an incredibly punitive theory of CEMA. This Court should decline to allow Plaintiff's sparse allegations to proceed.

MOTION TO DISMISS – 3
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

### III.    ANALYSIS

#### A.    Legal Standard

Upon a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a prima facie showing of jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[B]are allegations" in the complaint are not sufficient to meet this prima facie showing, "[b]ut uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted), and "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  (cleaned up).

Claims sounding in fraud must comport with Federal Rules of Civil Procedure 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) "requires more specificity," including the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Under Rule 9(b), it is insufficient to merely point to a statement and claim that it is false; instead, plaintiffs must plead evidentiary facts giving rise to an inference that the challenged statement was false when made. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549-53 (9th Cir. 1994); *see also Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 331 (4th Cir. 1994) (litigants cannot "simply cry fraud" to satisfy Rule 9(b)).

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

**B.      The Court does not have general or specific personal jurisdiction over The Philadelphia Inquirer.**

The Court should dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(2) because the Complaint does not allege any basis for personal jurisdiction over the Philadelphia Inquirer in Washington.

Plaintiff has not alleged that the Court has general jurisdiction over The Philadelphia Inquirer. Ninth Circuit courts uniformly require that the "continuous and systematic" or "substantial" contacts with the forum state must be considerable and extensive to justify exercising general jurisdiction. *See, e.g.*, *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting that the Ninth Circuit has "regularly [] declined to find general jurisdiction even where the contacts were quite extensive"). Plaintiff has not alleged that The Philadelphia Inquirer, a regional newspaper based in Philadelphia, Pennsylvania, has any contacts with Washington beyond the alleged emails to Plaintiff, a Washington resident. Plaintiff correctly alleges that The Philadelphia Inquirer is a Delaware LLC. Compl. ¶ 11. Its headquarters is in Philadelphia, Pennsylvania. *See id.* Thus, nothing in the complaint supports any basis for general jurisdiction over The Philadelphia Inquirer in Washington, and indeed none exists.

This Court also lacks specific personal jurisdiction over The Philadelphia Inquirer. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The Ninth Circuit applies a three-prong test to determine whether the exercise of specific jurisdiction over a non-resident defendant comports with due process. *Schwarzenegger*, 374 F.3d at 802. First, the defendant must have either purposefully directed his activities toward the forum or purposely availed itself of the privileges of conducting activities in the forum. *Id.* Second, the claims must arise out of the defendant's forum-related activities. *Id.* Finally, the exercise of jurisdiction must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

MOTION TO DISMISS – 5
CASE NO. 2:26-CV-02162-LK

The Complaint does not allege The Philadelphia Inquirer purposefully directed any contacts to Washington. Instead, it alleges that the newspaper engaged in email marketing campaigns that happened to include the email address of an individual who lives in Washington state. Specifically, the Complaint alleges that the newspaper "engaged in persistent marketing through mass email campaigns across the United States" and that it has "several ways of knowing where the recipients of its marketing emails are located." Compl. ¶ 83. Plaintiff goes on to allege that it is "highly probable" The Philadelphia Inquirer knew that Plaintiff lived in Washington based on various allegations about hypothetical access the newspaper "may" have to data that could show that the emails were being sent to an email address accessible to a person who lives in Washington. *Id.* ¶¶ 84–90. Tellingly, Plaintiff does not allege that The Philadelphia Inquirer purposefully directed its activities to Washington, only that there were potentially ways it *could* have tied an email address on its mailing list to a physical location. *Id.* ¶ 91.

These hypothetical allegations are insufficient to haul a Pennsylvania based regional newspaper into court in Washington state for multiple reasons.

First, sending an email to an individual who happens to live in a state is not sufficient to establish personal jurisdiction. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("The making of telephone calls and the sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over the non-resident defendant."); *Veritas Allies LLC v. Schiappacasse*, 2023 WL 6481674, at *5 (D. Or. Oct. 5, 2023) (applying the holding in *Peterson* to texts and emails). Indeed, even when a lawsuit arises out of the emails themselves, courts in the Ninth Circuit have held that mass marketing emails sent to a large number of recipients all over the United States are not sufficient to confer personal jurisdiction over the sender in any state in which a person happens to receive an email, absent any other purposeful direction of the contacts to a particular state. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020); *Jagen Invs. LLC v. Cannon Fin. Inst., Inc.*, 2016 WL 11485896, at *6 (D. Nev. June 27, 2016), *report and recommendation adopted*, 2018 WL 4335619 (D. Nev. Sept. 11, 2018) ("[A]n untargeted marketing email is insufficient to establish that the

MOTION TO DISMISS – 6
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

sender was expressly aiming its conduct at the forum."); *see also Rice v. Karsch*, 154 F. App'x 454, 462 (6th Cir. 2005) ("**Finding personal jurisdiction** over an individual **merely because he sends an email** to a generic email address is **incomprehensible to this court**. If such reasoning were adopted by this Court, Karsch would be subject to personal jurisdiction in any location where said email address could be accessed, *i.e.*, in *every* state regardless of whether the sender had any other contacts with that forum.") (emphasis added). Indeed, the Tenth Circuit has explicitly held, in a case brought under CAN-SPAM, that over 10,000 mass marketing emails sent to Utah residents were insufficient to establish personal jurisdiction in that state where the defendant did not know that the email recipients resided in Utah and there was nothing in the content of the emails that was specific to Utah. *XMission, L.C.*, 955 F.3d at 846. Email is even less of a purposeful contact with a specific state than a phone call or mail because, as the Tenth Circuit observed:

> There is, however, a distinguishing characteristic of email that must be taken into account. Although email is directed to particular recipients, email addresses typically do not reveal anything about the geographic location of the addressee. Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived.

*Shrader v. Biddinger*, 633 F.3d 1235, 1247–48 (10th Cir. 2011).

Second, it is unreasonable, and unjust, to haul a regional newspaper based in Philadelphia, Pennsylvania into court in Washington state just because a Washington resident allegedly happened to be on The Philadelphia Inquirer's email marketing list. Plaintiff has not alleged that the newspaper actually knew it was sending emails to Washington, only that it possibly *could* have known. Such tenuous contact with the state does not rise to the level of purposeful direction and offends due process.

Third, Plaintiff has alleged no injury in this case. Thus, he cannot argue that the "effects" of The Philadelphia Inquirer's alleged wrongful conduct was felt in Washington state. *See Calder v. Jones*, 465 U.S. 783, 787 (1984).

Because the Complaint alleges no facts that establish that The Philadelphia Inquirer purposefully directed the emails to Washington, this Court does not have specific personal

MOTION TO DISMISS – 7
CASE NO. 2:26-CV-02162-LK

jurisdiction and the case should be dismissed. The Complaint alleges no connection beyond a Washington email address receiving nine generic marketing emails. Such minimal contacts are not sufficient to establish any basis for personal jurisdiction over The Philadelphia Inquirer.

### C.      CAN-SPAM Preempts Plaintiff's CEMA Claims and Requires Dismissal.

The Supremacy Clause of the U.S. Constitution provides that "state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citing U.S. Const. art. VI, cl. 2). CAN-SPAM was passed by Congress with the express intention of preempting state laws like CEMA. Plaintiff's claims fall squarely within the scope of CAN-SPAM preemption.

In enacting CAN-SPAM, Congress provided a uniform standard for the regulation of commercial email. Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006) ("*Omega*"); *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1049 (9th Cir. 2009) (explaining that the purpose of CAN-SPAM was not to stamp marketing emails out of existence, as Congress recognized "there are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote"). "[C]ommercial e-mails are a bulk medium used to target thousands of recipients with a single mouse-click, meaning that the typical message could well be covered by the laws of many jurisdictions." *Omega*, 469 F.3d at 356. Congress recognized that because e-mail addresses do not indicate a recipient's physical location, it can be difficult or impossible to identify where a recipient lives and hence to determine which state laws apply. 15 U.S.C. § 7701(a)(11). Consequently, CAN-SPAM broadly preempts divergent state laws regulating e-mail:

> This chapter **supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages**, except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). Critically, CAN-SPAM prohibits commercial emails with subject headings that are "likely to mislead a recipient" about "a material fact regarding the

MOTION TO DISMISS – 8
CASE NO. 2:26-CV-02162-LK

contents or subject matter of the message,"[1] *id.* § 7704(a)(2), and primarily charges government agencies with enforcing that uniform rule, *id.* § 7706(b). Private individuals like Plaintiff lack standing to pursue private actions for relief under CAN-SPAM. *Virtumundo*, 575 F.3d at 1049–50, 1053–57 (explaining the statutory requirements for "adverse effect" and concluding that an individual plaintiff lacked standing to assert a CAN-SPAM claim). The plain language of the statute "demonstrates Congress's intent that the CAN-SPAM Act broadly preempt state regulation of commercial e-mail," subject only to a "limited, narrow exception." *Id.* at 1061 (holding that CAN-SPAM preempted CEMA claim).

### i.    CAN-SPAM Exempts Only State Law Actions Based on Claims that Sound in Fraud.

CAN-SPAM provides a "limited, narrow exception" for states to enforce a "statute, regulation, or rule prohibit[ing] ***falsity*** or ***deception*** in any portion of a commercial electronic mail message . . . ." 15 U.S.C. § 7707(b)(1) (emphasis added); *Virtumundo*, 575 F.3d at 1061 (emphasizing that CAN-SPAM's preemption provision did not apply to "acts of fraud" (quoting 15 U.S.C. § 7707(b)(2))). Under this exemption, only "traditionally tortious" theories of state law liability survive; all other theories of liability based on commercial email transmission are expressly preempted. *Virtumundo*, 575 F.3d at 1062. As the Ninth Circuit explained, this narrow reading of the CAN-SPAM exemption accords with fundamental principles of statutory interpretation:

---

[1]    In *Brown v. Old Navy, LLC* the Washington Supreme Court answered the certified question of whether CEMA "prohibit[s] the transmission of a commercial email with a subject line containing **any** false or misleading information," or whether it only applies where the false or misleading information relates to the "commercial nature of the email." 4 Wn.3d 580, 585–86 (2025) (emphasis added). Old Navy argued that CEMA only applied to email subject lines that deceived or mislead "about . . . *what* the email is about." *Id.* at 589. The Washington Supreme Court rejected this argument, holding that CEMA's prohibitions are not limited to misleading information about the commercial nature of the email. *Id.* at 590–91. However, the Court's holding in *Brown* is limited to the *types* of misleading statements that are actionable under CEMA. *Brown* never mentions preemption under CAN-SPAM. Accordingly, *Brown* sheds no light upon the primary issues raised by the pleadings in this case.

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

> Reading "falsity" in conjunction with "deception," which connotes a type of tort action based on misrepresentations, we are likewise persuaded that the exception language, read as Congress intended, refers to "traditionally tortious or wrongful conduct."

*Id.* (citing *Omega*, 469 F.3d at 354). The Ninth Circuit found "further support for this reading in the statutory text, which counsels against any interpretation that preempts laws relating to 'acts of fraud.'" *Id.*[2] Accordingly, only "tort action[s] based on misrepresentations" survive preemption. *Id.*; *see also Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *1 (C.D. Cal. May 23, 2007) (CAN-SPAM's exception only allows states to apply "traditional fraud prohibitions to the realm of commercial emails") (cited approvingly by *Virtumundo*, 575 F.3d at 1063–64). Any "contrary reading," the court reasoned, would "turn an exception to a preemption provision into a loophole so broad that it would virtually swallow the preemption clause itself." *Virtumundo*, 575 F.3d at 1061 (citing *Omega*, 469 F.3d at 355). By fully embracing the Fourth Circuit's reasoning in *Omega*, the Ninth Circuit expressly repudiated district court decisions interpreting CAN-SPAM's exemption to be "not limited *just* to common-law fraud and other similar torts." *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009) (emphasis in original); *see also, e.g.*, *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009).

The only claims that *can* survive CAN-SPAM preemption are traditional tort claims in the vein of fraud or deceit—those alleging, *e.g.*, materiality, reliance, actual injury, and deceptive intent. *Omega*, 469 F.3d at 354 (citing Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 726–27 (5th ed. 1984)) (defining deceit as species of false-statement tort); *Restatement (Second) of Torts* § 525 (describing elements of deceit); *Virtumundo*, 575 F.3d at 1061.

---

[2] Although federal district courts have declined to dismiss similar claims (*see, e.g.*, *Ma v. Nike, Inc.*, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026)), those decisions are not binding precedent. The Court in this case is bound by *Virtumundo*, which requires any non-preempted CEMA claim to allege materiality and be anchored in traditional tort theory, such as fraud.

BALLARD SPAHR LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

### ii. Plaintiff's CEMA Claims Do Not Fall Into the CAN-SPAM Fraud Exception.

There is no question that CEMA "expressly regulates the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1); *see* RCW 19.190.020. CEMA claims are therefore preempted unless they fall within CAN-SPAM's narrow exception.

Plaintiff's strict liability theory under CEMA—seeking $500 per email, allegedly trebled, for an entire class of Washington consumers who may have received one of the emails described in the Complaint over four years without alleging any elements of fraud—is a far cry from a traditional fraud or deceit claim and cannot survive preemption. *Virtumundo* confirms this type of strict liability theory, as pleaded, is exactly the type of claim Congress intended to preempt, and did preempt, under CAN-SPAM.

Plaintiff's CEMA claim is preempted by CAN-SPAM and does not fall within the fraud exception for multiple reasons. First, Plaintiff does not allege that the email subject lines from The Philadelphia Inquirer emails were *material* to any purchase he might have made; indeed, Plaintiff does not allege that he took any action at all. Second, Plaintiff has not alleged any *reliance* on the alleged misrepresentation in the emails subject lines, because, as stated, he does not allege that he took any action at all. Third, Plaintiff has not alleged any *injury* arising out of the alleged false or misleading subject lines. Finally, Plaintiff has not alleged that the subject lines were *false or misleading* at all. Each of these elements must be plead with particularity under Federal Rule of Civil Procedure 9(b) to state a claim for fraud or misrepresentation under Washington law. Because the Complaint does not allege any of these elements, Plaintiff's CEMA claim is preempted and must be dismissed.

### 1. Plaintiff's Complaint Fails to Plausibly or Particularly Allege Materiality.

Materiality is unquestionably required for Plaintiff's claims to survive preemption. *Virtumundo*, 575 F.3d at 1059 (claims based on "**immaterial** misstatements" are preempted) (emphasis added); *id.* at 1061–62 (stressing that the "materiality component comport[s] with the

MOTION TO DISMISS – 11
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

policy pursued by the federal legislation as a whole"); *id.* at 1062 ("the Committee's repeated reference to 'fraud' and 'deception' is telling and confirms that Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"); *id.* at 1065 (only claims premised on "*material*" misstatements survive preemption) (emphasis in original); *id.* (requiring "something of *material* importance") (emphasis in original). Materiality resembles "a but-for standard" and "asks whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (citation omitted). Plaintiff fails to clear this threshold hurdle.

Nowhere in the Complaint does Plaintiff contend that any statement by The Philadelphia Inquirer in any email subject line was material to Plaintiff, or even to a reasonable consumer. Instead, Plaintiff relies on a vague assertion that people care about sales. *E.g.*, Compl. ¶ 33. But materiality is not a generic concept that can be satisfied by pointing to what consumers value in the abstract; it requires a showing that the specific misstatement bore on the very essence of a transaction in which *the plaintiff* actually engaged. *See Martin v. Miller*, 24 Wn. App. 306, 309 (1979). Absent any allegation that Plaintiff acted upon the challenged subject lines or even read or noticed them, Plaintiff cannot plausibly show that the contents of the subject lines affected his decisions to transact, or not, with The Philadelphia Inquirer. *Id.* (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant"). The mere fact of emails sitting in an inbox cannot establish materiality in the context of email subject lines. If the recipients never noticed the emails and did not make resulting purchases, it is logically impossible for that email to have been material to him and his non-existent transaction.

*First*, it is insufficient to speculate that some hypothetical consumer *may* find the contents of the subject line material—Plaintiff must allege that the subject line was actually material *to him personally*. *Virtumundo*, 575 F.3d at 1063–64 (concluding CAN-SPAM preemption applied to plaintiff's CEMA claim and noting plaintiff "admit[ted] he was not in any way misled or deceived" by defendant's promotional emails); *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167

MOTION TO DISMISS – 12
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

(2012) (affirming judgment for defendant where alleged misstatements were not material to the plaintiff); *Martin*, 24 Wn. App. at 309 (discussing whether representation was "material to the plaintiffs' decision to enter into a purchase"). Here, Plaintiff makes no such allegation.

**Second**, materiality requires some resulting action—here, making a purchase. The fact that some people might care about the duration of a sale in the abstract is insufficient. *See id.*; *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "material to *[the plaintiff's] decision-making*") (emphasis added); *Elcon,* 174 Wn.2d at 167 (concluding that where omitted information did not impact plaintiff's bidding decision, it was not material). Plaintiff does not allege that he read the email subject lines, and even if he did, he does not claim that he changed his behavior in response. Plaintiff's strict liability theory would eviscerate CEMA's materiality requirement and expand the statute beyond the narrow scope preserved by CAN-SPAM's preemption exception. *See Omega*, 469 F.3d at 355.

**Third**, Plaintiff's "limited time" liability theory is particularly deficient because the allegedly urgent statements are immaterial as a matter of law. *See* Compl. ¶¶ 30–82. A statement is material only if it affects the very essence of the bargain. *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016) (a misrepresentation must concern the "essence of the bargain"); *Martin*, 24 Wn. App. at 309–10; 16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.) ("A material fact is one that *not only influences and affects <u>the transaction</u>*, but also goes to its *very essence and substance.*") (emphasis added). Statements such as "Sale extended," "ends tonight," "our best deal ever," or "today only" do not concern the nature, price, or quality of the product being sold, and therefore cannot be "something of material importance." *Brummett v. Wash. Lottery*, 171 Wn. App. 664, 677, 678 (2012) (holding that an advertisement claiming tickets were "going fast" was not material); *see also Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (2014) (unreasonable to conclude that "commercial missives" like "free gift" or "complimentary" in subject lines were likely to deceive a recipient under California's analogous spam statute). At most, such statements may influence *when* a consumer decides to buy—

MOTION TO DISMISS – 13
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

prompting a purchase one day earlier due to an asserted sense of urgency—but they do not alter the fundamentals of the transaction. Finally, statements like "our best deal ever" (Compl. ¶ 47) are not actionable subject lines; they are puffery. *Brown*, 4 Wn.3d at 596 ("Best Deals of the Year" promotion is inactionable puffery).

### 2.   Plaintiff's Complaint Does Not Allege Reliance.

To state a claim that sounds in fraud or deceit, a plaintiff must also allege his or her own "reliance on the truth" of the misrepresentation. *M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 78 n.23 (2025) (listing the nine elements of fraud). Reliance is required to avoid preemption. *Virtumundo*, 575 F.3d at 1063–64 (concluding CAN-SPAM preemption applied to plaintiff's CEMA claim and noting plaintiff "admit[ted] he was not in any way misled or deceived" by defendant's promotional emails). Plaintiff fails to clear this basic hurdle. *BP W. Coast Prods., LLC v. Shalabi*, 2012 WL 2277843, at *5 (W.D. Wash. June 14, 2012) (dismissing fraud claims where plaintiff could not allege reliance element); *Isomedia, Inc. v. Spectrum Direct, Inc.*, 2009 WL 10676391, at *3–4 (W.D. Wash. May 27, 2009) ("[A]n allegation that an email was received is not the same as an allegation that anyone acted in reliance upon the information contained in it.").

### 3.   Plaintiff's Complaint Does Not Allege that Plaintiff or Class Members Suffered Any Fraud-Based Injury.

To state a non-preempted CEMA violation and corresponding CPA claim, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Virtumundo*, 575 F.3d at 1066 (citing *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 84 (2007)); *see also M.G.*, 34 Wn. App. 2d at 78 n.23 (elements of fraud); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986) (to prevail in a private CPA claim, the plaintiff must prove injury to a person's business or property). Plaintiff does not allege that he sustained any injury, economic or otherwise, besides the "annoyance and harassment" of receiving marketing emails. *See* Compl. ¶ 92; *see also id.* ¶ 5 (receipt of the emails "waste[s] customers' time"). But "annoyance and harassment" are

MOTION TO DISMISS – 14
CASE NO. 2:26-CV-02162-LK

tied to the frequency of emails, which would not change even if they had different subject lines. Thus, the alleged CEMA violation—the allegedly deceptive email subject lines—did not cause the alleged injury.

Nor is Plaintiff's "injury" in having merely received emails actionable. The Washington Supreme Court recently held that non-economic injuries akin to annoyance and harassment are insufficient to establish cognizable injuries under the CPA. *Montes v. SPARC Grp. LLC*, 586 P.3d 999, 1008 (Wash. 2026). On certified question, the Court held that "[o]nly economic losses count as injuries to 'business or property' under the CPA—noneconomic losses, such as 'personal injury,' 'mental distress, embarrassment, and inconvenience,' do not count." *Id.* at 1001. Here, the Complaint contains no allegation of "objective economic loss." *Id.* at 1008. Nor could it. Plaintiff's entire lawsuit is premised on his alleged passive receipt of The Philadelphia Inquirer's marketing emails.

Plaintiff also does not allege an inability to unsubscribe or cease receiving The Philadelphia Inquirer's emails, nor even a desire to do so, nor does he explain how his receipt of emails that he has *chosen* to continue receiving amounts to an injury.

### 4. Plaintiff Does Not Sufficiently Allege that The Philadelphia Inquirer's Advertising Email Subject Lines Were False or Misleading.

Plaintiff's CEMA claim also fails because Plaintiff does not allege with requisite particularity that the subject lines he received were false or misleading. To state a claim under CEMA, a plaintiff must have received emails that "contain[] false or misleading information in the subject line." RCW 19.190.020(1)(b). Plaintiff *theorizes* that the emails were false or deceptive because they allegedly represented that a promotion would end on one date, but the next day, The Philadelphia Inquirer sent an email extending the promotion. Compl. ¶¶ 44–82. Allegations that The Philadelphia Inquirer offered the same promotion successively do not plausibly suggest (much less with the particularity required by Rule 9(b)) that the subject lines were false or deceptive. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 165 (1987).

MOTION TO DISMISS – 15
CASE NO. 2:26-CV-02162-LK

First, Plaintiff's theory of "falsity" conflates The Philadelphia Inquirer's alleged pricing practices with the narrow question under CEMA: whether the subject lines themselves were materially false or misleading. Here, Plaintiff does not allege that any subject line misrepresented the scope of the advertised sale. Plaintiff does not allege, for example, that any subject line advertised a discount that was not offered. To the contrary, the subject lines in the Complaint contain clear and straightforward language about sale limitations, such as "ENDING NOW: $1 for 6 months" and "Last Chance: 99% OFF 6 MONTHS." Compl. ¶¶ 73, 79. In other words, Plaintiff's complaint is directed at The Philadelphia Inquirer's pricing practices, not the subject lines themselves. In *Montes*, 586 P.3d at 1004–05, the Washington Supreme Court expressly rejected CPA claims based on allegations of false discounts where the plaintiff did not allege any objective economic harm.

Second, Plaintiff does not allege any facts suggesting that the emails he received contained false or misleading information at the time they were sent. *See Holland Furnace Co. v. Korth*, 43 Wn.2d 618, 622 (1953) ("Another essential element necessary to establish actionable fraud is that the speaker must have 'knowledge of its falsity or ignorance of its truth.'"); *In re Estate of Kessler*, 95 Wn. App. 358, 374 n.31 (1999) (enumerating elements of fraud including a party's "knowledge of the falsity or reckless disregard as to its truth"); *see also* ESHB 2274, Ch. 135 (Wash. 69th Leg. 2026 Reg. Session) (effective June 11, 2026) (CEMA Amendment) ("No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that: . . . [u]ses a subject line which, based on the person's actual knowledge or knowledge fairly implied on the basis of objective circumstances, contains false or misleading information in the subject line."). Plaintiff does not allege with requisite particularity that The Philadelphia Inquirer had already decided to continue a promotion at the time each email was sent; rather, he asks the Court to infer falsity based solely on The Philadelphia Inquirer's subsequent conduct. But a defendant's subsequent decision to extend or reintroduce a promotion does not render an earlier promotional

MOTION TO DISMISS – 16
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

statement retroactively false when made. *See Brown*, 4 Wn.3d at 595 ("Promotions that state 'Best Deals of the Year' are not misrepresentations and do not communicate information that retroactively becomes false (and actionable) under CEMA because market conditions change such that a better sale is later available.").

Plaintiff's Complaint fails to allege materiality, reliance, injury, or falsity. Accordingly, Plaintiff's claims do not fall within the fraud exception, and the Court should dismiss because CAN-SPAM preempts them.

**D.      Plaintiff fails to state a claim under CEMA because he does not allege The Philadelphia Inquirer knew Plaintiff was a Washington resident.**

CEMA prohibits transmitting "a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender **knows, or has reason to know**, is held by a Washington resident that . . . Contains false or misleading information in the subject line." RCW 19.190.020(1) (emphasis added). Plaintiff does not allege The Philadelphia Inquirer knowingly sent emails from Washington. Instead, Plaintiff speculates that it is "highly probable" The Philadelphia Inquirer, a regional newspaper in Pennsylvania, knew it was sending emails to Washington residents on the other side of the country. Compl. ¶ 91. But Plaintiff does not support his bald allegations of "probable" knowledge with facts, and indeed they strain credulity. Instead, Plaintiff conclusorily states, based on six hypothetical and speculative reasons, that The Philadelphia Inquirer has knowledge that Plaintiff was a Washington resident. Conclusory statements need not be taken as true on a motion to dismiss. *Iqbal*, 556 U.S. at 663 (a court need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

First, Plaintiff's argument that "the sheer volume of email marketing that The Inquirer engages in puts it on notice that Washington residents would receive its emails," Compl. ¶ 84, suggests that any retailer with a long email listserv or who sends frequent emails cannot send an email *to anyone* without risking a CEMA violation because the retailer should know that the recipient *might* reside in Washington. Such an interpretation turns CEMA into a nationwide statute

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

covering every large, or even moderately sized email marketer. This approach does not comport with the plain language of CEMA, the limitations of the United States Constitution, or basic common sense. The Complaint contains no factual basis for any plausible inference that a regional newspaper thousands of miles away should expect that its email distribution list includes Washington residents.

Second, Plaintiff claims that some hypothetical consumers may have "self-report[ed]" their locations to The Philadelphia Inquirer. Compl. ¶ 85. But, Plaintiff does not allege—as he must—that *he* self-reported his location in any way.

Third, Plaintiff claims The Philadelphia Inquirer "may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Inquirer emails." *Id.* ¶ 86. Plaintiff then speculates, without offering any basis, that The Philadelphia Inquirer "appears to use Salesforce Marketing Cloud to manage its email marketing campaigns" and that software allows users to view various data about email recipients, including "geographic data." *Id.* ¶ 87. Courts have cast doubt on the reliability of IP address tracking. *See, e.g.*, *Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *United States v. Carter*, 549 F. Supp. 2d 1257, 1264 (D. Nev. 2008) (acknowledging that IP addresses can be spoofed, shared, or associated with multiple devices, complicating their use as evidence of the user's definitive location). Further, Plaintiff offers no basis for its claims about Salesforce Marketing Cloud, nor does it allege that The Philadelphia Inquirer uses the platform, or uses any platform that gives it access to IP addresses. These hypothetical, speculative allegations are not sufficient to state a claim under CEMA.

Fourth, Plaintiff again speculates that The Philadelphia Inquirer "may" obtain location information from "commercial database brokers" such as Acxiom, Oracle, and Equifax. Compl. ¶ 88. But, once again, Plaintiff does not allege that The Philadelphia Inquirer actually uses such services (nor is there any obligation that it must), only that it theoretically could. Nor does it allege

MOTION TO DISMISS – 18
CASE NO. 2:26-CV-02162-LK

that these "commercial database brokers" would tell The Philadelphia Inquirer whether Plaintiff's email address was owned by a Washington resident. These hypothetical allegations are insufficient.

Fifth, Plaintiff states The Philadelphia Inquirer "may" obtain information about email addresses by using "identity resolution" services. Once again, this allegation does not state that The Philadelphia Inquirer used such a service or that such a service would tell The Philadelphia Inquirer that Plaintiff's email address was owned by a Washington resident. Indeed, Plaintiff's listing of various services that, allegedly, could be used to identify the location of an email address does not meet the strict federal pleading standard, which requires plaintiffs to allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

Sixth, Plaintiff claims The Philadelphia Inquirer "may" obtain information about the state in which its email recipients are based "because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses." *Id.* ¶ 90. While CEMA does presume knowledge of Washington residency where that information "is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," RCW 19.190.020(2), Plaintiff does not allege any facts to support his conclusory allegation by reciting this statutory language verbatim. For instance, the Complaint does *not* allege what email address or domain Plaintiff used, whether that email service actually retains geographic information on its customers, and whether that geographic information is available to third parties upon request. Absent any of this information, Plaintiff has not met even the bare burden of pleading to establish constructive knowledge under CEMA.

More fundamentally, Plaintiff's theory impermissibly inverts the statutory standard. CEMA's "reason to know" requirement presupposes that a sender possesses some affirmative basis—an identifiable fact or circumstance—from which it could infer a recipient's Washington residency. Plaintiff's approach turns that standard on its head: under his theory, a sender is presumed to have reason to know of Washington residency unless it can produce affirmative evidence to the contrary. This effectively creates a "reason *not* to know" standard, under which

BALLARD SPAHR LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

retailers face liability for emailing anyone who might conceivably be a Washington resident—even absent any indication that the recipient actually is one. No court has endorsed this reversal.

Plaintiff's argument also contradicts a driving impetus of CAN-SPAM, which noted that the various 50 states "do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11) (Congressional findings and policy). After all, "commercial e-mails are a bulk medium used to target thousands of recipients with a single mouse-click . . . ." *Omega*, 469 F.3d at 356.

Where a recipient is known only by an email address—a string of characters wholly agnostic as to geography—there is simply no fact from which a company could derive any reason to know of their Washington residency. The Complaint includes nothing to suggest that Plaintiff was anything but anonymous. Requiring an out-of-state newspaper to withhold emails to every person who *might* be a Washington resident on its mailing list creates an unworkable choice. Local newspapers would either have to cease email marketing to any list that *might* theoretically contain an email address belonging to a Washington resident or risk being dragged into court in Washington for any email campaign it undertakes.

### E.     Plaintiff Cannot Recover Damages Under CEMA.

Plaintiff cannot recover statutory damages under CEMA. Plaintiff's First Claim seeks to recover under CEMA, RCW 19.190.020. Compl. ¶¶ 116–122. CEMA provides: "[a] person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations, and to seek up to five hundred dollars per violation, or actual damages, whichever is greater." RCW 19.190.090. However, damages in a private cause of action under CEMA are available only where the defendant induced the plaintiff to provide personally identifying information, also known as phishing. RCW 19.190.090(1) ("A person who seeks damages under this subsection may only bring an action against a person or entity that directly violates RCW 19.190.080."). The Washington Supreme Court agrees. In *Wright v. Lyft, Inc.*, the Supreme

MOTION TO DISMISS – 20
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

Court held that "[t]he plain language of chapter 19.190 RCW provides a direct cause of action with damages limited to phishing violations." 189 Wn.2d 718, 727 (2017).

Here, Plaintiff asserts a private cause of action under CEMA, RCW 19.190.020, but does not assert that he was a victim of phishing, or that The Philadelphia Inquirer violated RCW 19.190.080. *See* Compl. In these circumstances, CEMA permits a private cause of action; however, damages are unavailable. RCW 19.190.090(1); *Wright,* 189 Wn.2d at 727. Thus, under CEMA, Plaintiff can only seek an injunction, not statutory damages. While Plaintiff does not specify whether he seeks damages under his CEMA claim, Compl. ¶ 122, the Court should dismiss any request for damages under Plaintiff's First Claim to Relief, to the extent asserted, as unsupportable under the plain language of CEMA.

**F.    Plaintiff's Claim for Treble Damages under the Consumer Protection Act Must be Dismissed because Plaintiff Has Not Alleged Actual Damages.**

Only actual damages may be trebled under the CPA. RCW 19.86.090 ("[T]he court may, in its discretion, increase the award of damages up to an amount not to exceed three times the **actual** damages sustained.") (emphasis added); *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990) ("Whether an 'injury' has been sustained so as to support an award of attorneys' fees and costs under the Consumer Protection Act is a different inquiry than whether treble damages are appropriately awarded. An injury cognizable under the Act will sustain an award of attorneys' fees, while treble damages are based upon 'actual' damages awarded."); *Handlin v. On-Site Manager Inc.*, 187 Wn. App. 841, 849 (2015) ("The failure to show actual monetary damages only precludes the recovery of treble damages. It does not act as a complete bar to a recovery." (quoting *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 660 (1983))).

Here, Plaintiff seeks to treble statutory CEMA damages, which – even if statutory damages are available for a CEMA predicate claim under the CPA – they cannot be trebled. Only actual damages may be trebled, up to $25,000. RCW 19.86.090. As Plaintiff has failed to allege any actual damages, the Court should dismiss his claim for treble damages.

MOTION TO DISMISS – 21
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

**G.      The Damages Award Plaintiff Seeks is Unconstitutionally Punitive.**

The Due Process Clause "set[s] outer limits on the magnitude of damages awards." *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022). "[C]onstitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered." *Id.* In the context of class actions claiming statutory damages, aggregated awards can violate due process. *Id.* at 1121. The Washington Supreme Court recently acknowledged this argument in the context of a similarly punitive statute, the Equal Pay and Opportunities Act, seemingly recognizing that the constitutionality of such a damages award is questionable. *See Branson v. Wash. Fine Wine & Spirits, LLC*, 5 Wn.3d 289, 303 n.6 (2025).

In determining whether a statutory damages award is disproportionately punitive, the court considers seven factors: (1) the amount of award to each plaintiff; (2) the total award; (3) the nature and persistence of the violations; (4) the extent of the defendant's culpability; (5) damage awards in similar cases; (6) the substantive or technical nature of the violations; and (7) the circumstances of each case. *Wakefield*, 51 F.4th at 1123 (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990)). Analysis of these factors shows that the award Plaintiff seeks is disproportionately, and thus unconstitutionally, punitive. In *Six Mexican Workers*, for example, the court considered $400 to $1600 per class member excessive even though class members sustained some actual damages for underpayment of wages. 904 F.2d at 1309.

Here, Plaintiff alleges that the class size is minimally in the "thousands," and the Complaint describes numerous allegedly violative emails across multiple promotional campaigns. Compl. ¶ 109. As to factors (1), (2), and (5), taking Plaintiff's allegations as true, each class member would be awarded $500 for each of the 9 emails alleged in the Complaint, despite sustaining zero actual damages. This is consistent with awards the Ninth Circuit has deemed unconstitutionally excessive in other cases. The aggregate fee award would be staggering. Even assuming "thousands" means a class size of only 2,000 members, and assuming each class member received only those 9 emails alleged in the Complaint (despite the capacious class definition), Plaintiff seeks, at minimum, $9

MOTION TO DISMISS – 22
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

million in statutory damages on behalf of the class, **before** considering trebling and attorneys' fees and costs.

As to factors (3), (4), (6), and (7), The Philadelphia Inquirer's alleged violations—even if proven—are minor. Plaintiff asserts he received 9 marketing emails over a period spanning 2023 to 2025. *See* Compl. ¶¶ 94–102. This is in no way persistent or pervasive in a manner warranting the damages sought, yet Plaintiff seeks thousands of dollars for allegedly receiving emails that he never relied upon, much less to his detriment. Indeed, Plaintiff is not alleging that The Philadelphia Inquirer offered a promotion and then failed to follow through, but rather that it offered the same or similar promotions in succession. Plaintiff has not articulated any injury or damages resulting from The Philadelphia Inquirer's emails, because none exists. Plaintiff's proposed application of CEMA is disproportionately punitive in light of the alleged wrongdoing.

**H.  The Court Should Dismiss the Case with Prejudice Because Amendment is Futile.**

While leave to amend is generally freely granted, the Court need not grant leave to amend where amendment is futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1324 (W.D. Wash. 2015).

Here, amendment is futile. Plaintiff cannot cure the deficiencies in his Complaint, regardless of the basis on which the Court may dismiss the Complaint. The Court has no personal jurisdiction over The Philadelphia Inquirer. This cannot be cured by amendment because the emails were not Washington-specific, nor were they purposefully directed at Washington. This deficiency cannot be cured by amendment. Moreover, CEMA is preempted by CAN-SPAM and this case does not fall within an exception to CAN-SPAM preemption as a matter of law.

**IV.  CONCLUSION**

For the reasons stated herein, Plaintiff's Complaint should be dismissed with prejudice.

MOTION TO DISMISS – 23
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107

DATED:  June 29, 2026

BALLARD SPAHR LLP


By: */s/Erin M. Wilson*
    Erin M. Wilson, WSBA No. 42454
    1301 Second Avenue, Suite 2800
    Seattle, WA 98101-3808
    Telephone: 206.223.7000
    Facsimile: 206.223.7107
    Email:  wilsonem@ballardspahr.com


By: */s/Emily Williams*
    Emily Williams, WSBA No. 58648
    1301 Second Avenue, Suite 2800
    Seattle, WA 98101-3808
    Telephone: 206.223.7000
    Facsimile: 206.223.7107
    Email:  williamsea@ballardspahr.com

*Attorneys for Defendant*

*I certify the foregoing Memorandum contains 8397 words in compliance with the Local Civil Rules*

MOTION TO DISMISS – 24
CASE NO. 2:26-CV-02162-LK

**BALLARD SPAHR LLP**
1301 Second Avenue, Suite 2800
Seattle, WA 98101-3808
Telephone: 206.223.7000
Fax: 206.223.7107