UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW WILDMAN, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE PHILADELPHIA INQUIRER, LLC,<br><br>Defendant. | Case No. 2:26-cv-02162-LK<br><br>The Honorable Lauren King<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT |



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. APPLICABLE STANDARD ........................................ 2

III. ARGUMENT ........................................ 3

A. Plaintiff Has Pled the Court's Specific Jurisdiction Over The Inquirer. ........................................ 3

i. The Inquirer Purposefully Directed the Challenged Emails to This Forum. ........................................ 4

ii. Plaintiff's Claims Arise Out of And Relate to The Inquirer's Forum Activities. ........................................ 6

iii. Exercise of Specific Jurisdiction Would Not Be Unreasonable Here. ........................................ 8

iv. Alternatively, the Court should allow discovery before final decision. ........................................ 10

B. Plaintiff's CEMA claims are not preempted. ........................................ 12

i. The Inquirer's deceptions are more than bare immaterial errors. ........................................ 15

ii. The Inquirer's Non-Existent Preemption Standard Does Not Apply. ........................................ 19

C. To the Extent It Applies, Plaintiff's Pleadings Satisfy Rule 9(b). ........................................ 21

D. Plaintiff Has Sufficiently Pled The Inquirer's Knowledge of Email Recipients' Washington Residency. ........................................ 23

E. Plaintiff has Pled Damages Under the CPA and *Wright* ........................................ 24

F. The Inquirer's Attempt to Excise Damages Should be Rejected. ........................................ 26

G. The Inquirer's Hypothetical Damages Challenge Fails. ........................................ 26

IV. CONCLUSION ........................................ 28



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
2026 WL 764140 (W.D. Wash. Mar. 18, 2026) ....................1, 12

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
1 F.3d 848 (9th Cir. 1993) ....................3

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. 2009) ....................13, 15, 20

*Asis Internet Servs. v. Subscriberbase Inc.*,
2009 WL 4723338 (N.D. Cal. Dec. 4, 2009) ....................13, 15, 20, 21

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
617 F. Supp. 2d 989 (N.D. Cal. 2009) ....................13, 15, 20

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ....................9

*Balsam v. Trancos, Inc.*,
138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012) ....................13, 20

*Branson v. Washington Fine Wine & Spirits, LLC*,
574 P.3d 1031 (2025) ....................27

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .................... *passim*

*Brown v. Old Navy, LLC*,
4 Wash. 3d 580 (2025) ....................1, 17, 18, 27

*Brummett v. Washington's Lottery*,
171 Wash. App. 664 (2012) ....................18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................3, 4

*Calder v. Jones*,
465 U.S. 783 (1984) ....................4, 5

*Cerkezoglu v. Federici Brands LLC*,
2026 WL 1858279 (W.D. Wash. June 29, 2026) ....................2



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ....................24

*Cox v. Gritman Med. Ctr.*,
170 F.4th 724 (9th Cir. 2026) ....................3, 5, 7, 9

*Daniel v. Lennar Corp.*,
2019 WL 8194735 (C.D. Cal. Oct. 16, 2019)....................26

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ....................10, 11, 12

*Devivo v. Sheex Inc.*,
2026 WL 1734589 (W.D. Wash. June 16, 2026)....................2

*Elcon Const., Inc. v. E. Washington Univ.*,
174 Wash. 2d 157 (2012)....................19

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ....................19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................3

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ....................9

*Gordon. Hoang v. Reunion.com, Inc.*,
2010 WL 1340535 (N.D. Cal. Mar. 31, 2010)....................14, 15, 20

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) .................... *passim*

*Handlin v. On-Site Manager Inc.*,
187 Wash. App. 841 (2015)....................26

*Harrington v. Vineyard Vines, LLC*,
813 F. Supp. 3d 1218 (W.D. Wash. 2025)....................1, 12, 18

*Hayashi v. Red Wing Peat Corp.*,
396 F.2d 13 (9th Cir. 1968) ....................12

*Haynes N. Am., Inc. v. eManualOnline.com*,
2025 WL 1489547 (C.D. Cal. May 23, 2025) ....................10

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .................... *passim*



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Hypertouch, Inc. v. ValueClick, Inc.*,
123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011) .......... 13, 15, 20

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
2009 WL 10676391 (W.D. Wash. May 27, 2009) .......... 20

*Jackson v. Hanesbrands, Inc.*,
2026 WL 1161444 (E.D. Wash. Apr. 28, 2026) .......... 2, 12

*Jagen Invs. LLC v. Cannon Fin. Inst., Inc.*,
2016 WL 11485896 (D. Nev. June 27, 2016) .......... 8

*Kempf, et al.*, v. *FullBeauty Brands Ops.*,
2026 WL 395677 (W.D. Wash. Feb. 12, 2026) .......... 1, 12, 23

*Kousisis v. United States*,
145 S. Ct. 1382 (2025) .......... 16, 17, 18

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) .......... 11

*Liss v. Skechers USA Inc.*,
2026 WL 1392327 (W.D. Wash. May 19, 2026) .......... 2, 12

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
2024 WL 4451955 (W.D. Wash. Oct. 9, 2024) .......... 2, 23, 24, 25

*Ma v. Nike*,
816 F. Supp. 3d 1227 (W.D. Wash. 2026) .......... 1, 12, 23

*Martin v. Miller*,
24 Wash. App. 306 (1979) .......... 17, 20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 7

*New Mexico State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) .......... 20

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) .......... 14, 21

*Pag-Daly City, LLC v. Quality Auto Locators, Inc.*,
2013 WL 12149704 (N.D. Cal. Jan. 25, 2013) .......... 12

*Powerteq, LLC v. Moton*,
2016 WL 80558 (N.D. Cal. Jan. 7, 2016) .......... 11



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Repperger v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2026 WL 1157157 (E.D. Wash. Apr. 28, 2026) .......... 2, 12

*Rice v. Karsch*,
154 F. App'x 454 (6th Cir. 2005) .......... 8

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) .......... 6

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) .......... 2, 15, 19

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4, 8

*Shade v. Gorman*,
2009 WL 196400 (N.D. Cal. Jan. 28, 2009) .......... 26

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) .......... 27

*Smith v. Anastasia Inc.*,
2014 WL 12577598 (S.D. Cal. Sept. 15, 2014) .......... 13, 15, 20

*Stevens-Hill v. Glamnetic LLC*,
2026 WL 1741316 (W.D. Wash. June 17, 2026) .......... 2

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) .......... 11

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .......... 22

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) .......... 20

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016) .......... 17

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 21, 23

*Vines of Argentina, LLC v. BBI Argentina*,
2025 WL 974848 (W.D. Wash. Mar. 31, 2025) .......... 7

*Wagner v. Spire Vision*,
2014 WL 889483 (N.D. Cal. Mar. 3, 2014) .......... 13, 15, 20



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ....................27, 28

*Walden v. Fiore*,
571 U.S. 277 (2014)....................5

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,
822 F. Supp. 3d 1223 (E.D. Wash. 2026) ....................1, 12

*Williams v. Pac. Sunwear of California LLC*,
2024 WL 4626541 (D. Ariz. Oct. 30, 2024)....................5

*Wright v. Lyft, Inc.*,
406 P.3d 1149 (Wash. 2017).................... *passim*

*XMission, L.C. v. Fluent LLC*,
955 F.3d 833 (10th Cir. 2020) ....................8

**Statutes**

15 U.S.C. § 7707(b)(1) ....................13, 14

15 U.S.C. §§ 7701–7713....................12

RCW § 4.28.185(1)....................3

RCW § 19.190.020 .................... *passim*

RCW § 19.190.030 ....................1

RCW § 19.190.080 ....................25

RCW § 19.190.090 ....................25

**Other Authorities**

S. Rep. No. 108-102....................13

U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 27 (2022)....................16



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
TEL. 317.636.6481 FAX 317.636.2593

## I. INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) and Consumer Protection Act (CPA) prohibit commercial emails containing "false or misleading information in the subject line." RCW § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). Faced with this clear prohibition, recently affirmed in *Brown v. Old Navy, LLC*, 4 Wash. 3d 580 (2025), Defendant The Philadelphia Inquirer, Inc. ("The Inquirer") simply decided to ignore it.

The Inquirer relentlessly spams consumers' inboxes with email subject lines laden with caps that herald the beginning, middle, and merciful end of promotions—*falsely*. "Sale ends today!" *and* "ENDING NOW" *and* "🛑 $1/WEEK for 1 YEAR ends today! 🛑" *and* "24 HOURS LEFT" on deals that did not "end" or run out of "hours" on the purported deadline, but instead were continued the very next day. Dkt. 1-1 ("Compl."), ¶¶ 43-82. Feigned mistakes, false deadlines, urgent warnings. When deployed to deceive consumers, these tactics are known as false limited time messages, false time scarcity claims, or false urgency claims, Compl., ¶¶ 30-38, and are a "common way online marketers manipulate consumer choice by inducing false beliefs." *Id.* at ¶ 30. As deployed by The Inquirer, these tactics are straightforward violations of CEMA, and thus the CPA.

The Inquirer's motion to dismiss (Dkt. 13) should be rejected, aligned with numerous such denials by this Court and the Eastern District of Washington. *E.g.*, *Ma v. Nike*, 816 F. Supp. 3d 1227, 1230-32 (W.D. Wash. 2026); *Harrington v. Vineyard Vines, LLC*, 813 F. Supp. 3d 1218, 1220 (W.D. Wash. 2025), *reconsideration denied,* 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Kempf, et al.*, v. *FullBeauty Brands Ops.*, No. C25-1141 TSZ, 2026 WL 395677, at *4-5 (W.D. Wash. Feb. 12, 2026); *Agnew v. Macy's Retail Holdings, LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

822 F. Supp. 3d 1223 (E.D. Wash. 2026); *Jackson v. Hanesbrands, Inc.*, No. 2:25-CV-00440-SAB, 2026 WL 1161444 (E.D. Wash. Apr. 28, 2026); *Liss v. Skechers USA Inc.*, No. 3:25-CV-05861-DGE, 2026 WL 1392327 (W.D. Wash. May 19, 2026); *Stevens-Hill v. Glamnetic LLC*, No. 3:26-CV-05003-DGE, 2026 WL 1741316 (W.D. Wash. June 17, 2026); *Repperger v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 2:25-CV-00526-RLP, 2026 WL 1157157 (E.D. Wash. Apr. 28, 2026); *Cerkezoglu v. Federici Brands LLC*, No. 3:25-CV-06108-DGE, 2026 WL 1858279 (W.D. Wash. June 29, 2026); *Devivo v. Sheex Inc.*, No. 3:25-CV-05807-DGE, 2026 WL 1734589 (W.D. Wash. June 16, 2026). The Inquirer largely ignores these cases in its brief.

The Inquirer has no facial attack against Plaintiff's well-pled allegations of material deception under CEMA; its preemption assertions fail under the Ninth Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009); its argument that Plaintiff does not have a damages claim fails under the Washington Supreme Court's opinion in *Wright v. Lyft, Inc.*, 406 P.3d 1149 (Wash. 2017) (*en banc*); and Plaintiff has manifestly pled that it is subject to personal jurisdiction here—by virtue of, *inter alia*, its purposeful direction of deceptive marketing emails to the market of Washington consumers.

The Court should deny this motion.

## II. <u>APPLICABLE STANDARD</u>

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). The motion must be denied if the complaint states a claim that is "plausible on its face." *Id.* Where, as here, the defendant seeks Rule 12(b)(6) dismissal based on an affirmative defense, it must show that the "allegations in the complaint suffice to establish the defense" and the defense



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

is "apparent from the face" of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quotations omitted).

## III. ARGUMENT

### A. Plaintiff Has Pled the Court's Specific Jurisdiction Over The Inquirer.

The Inquirer ignores the vast majority of pleadings and on-point Ninth Circuit authority to assert no basis for personal jurisdiction here. Dkt. 13 ("Motion" or "Mot."), 4. It is flat wrong. Plaintiff has pled specific jurisdiction through The Inquirer's purposefully direction of false or misleading marketing emails to the Washington market of consumers, to sell subscriptions to its nationally distributed paper, available through, *e.g.*, its interactive website. Because Plaintiff's claims arise from and relate to these contacts, the Court has personal jurisdiction under recent governing decisions, including *Herbal Brands* and *Briskin*, holding that specific jurisdiction anchored in "something more" than a passive website meets the threshold for constitutional due process.

"Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 733 (9th Cir. 2026) (citation and quotations omitted) (reversing denial). Here, Washington's long-arm statute "imposes a minimal threshold" coextensive with the requirements of the Due Process Clause: "'[t]he transaction of *any* business within [Washington].'" *Id.* at 733-34 (quoting RCW § 4.28.185(1)) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 850–51 (9th Cir. 1993) (Washington's long-arm statute and constitutional analysis "merge into a single due process test" (collecting cases)).

Plaintiff does not allege general jurisdiction or that The Inquirer is "essentially at home in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). But



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

Plaintiff has amply pled specific jurisdiction, which "covers defendants less intimately connected with a State[.]" *Id.* at 359 (citing *Burger King Corp.*, 471 U.S. at 475). The Ninth Circuit "analyze[s] specific personal jurisdiction under a three-part test": (1) the out-of-state defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim must "arise[ ] out of or relate[ ] to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750–51 (9th Cir. 2025) (*en banc*) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)) (quotations omitted).

This test is met here.

**i. The Inquirer Purposefully Directed the Challenged Emails to This Forum.**

The first prong "encompasses two separate concepts: 'purposeful availment' and 'purposeful direction.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citation omitted). While "purposeful availment" looks at matters "sounding in contract" and "unintentional tort claims," the "purposeful direction test applies when a case sounds in tort" *Id.* (applying the latter to claims that included false advertising, noting it "requires an intentional tortious or 'tort-like' act" (citations omitted) (collecting cases)). Physical presence in the forum is not required. *Briskin*, 135 F.4th at 751-52 (noting the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications" (quoting *Burger King*, 471 U.S. at 476 (quotations omitted)).

To determine whether The Inquirer "purposefully directed" its activities to Washington, the *Calder* "effects" test is applied, which "focuses on the forum in which the defendant's actions



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

were felt, whether or not the actions themselves occurred" there. *Id.* at 1091 (referring to *Calder v. Jones*, 465 U.S. 783 (1984)) (citation omitted). "The *Calder* effects test asks whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citation and quotations omitted)).

As in *Herbal Brands*, The Inquirer's act of directing commercial emails to residents of Washington, including Plaintiff—emails that contain false or misleading information in order to sell subscriptions—"is an intentional act." 72 F.4th at 1090. The first element is easily met. As noted *supra*, Plaintiff has explicitly pled that The Inquirer sells "its products in Washington through its website and through digital and print subscriptions to its newspaper." Compl., ¶ 12. Defendant ignores this allegation (*see* Mot., 5-8), as well as many other pleadings demonstrating its contacts with the market of Washington consumers. *Id.* Threaded throughout the Complaint, Plaintiff has alleged that The Inquirer is engaged in a scheme of "spamming" and "harassing" Washington consumers with its false or misleading emails. *See id.* at ¶ 4 ("The Inquirer spams Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets."; *id.* at ¶ 7 (pleading, "The Inquirer's harassment of Washington consumers with deceptive marketing for violations of CEMA and the Consumer Protection Act"); *see id.* at ¶¶ 2, 42, 84, 92, 120, 130 (same); *id.* at ¶¶ 43-82 (emails demonstrating scheme). This includes the *nine* such emails that The Inquirer transmitted to Plaintiff. *Id.* at ¶¶ 93-102. *See, e.g.*, *Williams v. Pac. Sunwear of California LLC*, 2024 WL 4626541, at *4 (D. Ariz. Oct. 30, 2024) (sending an email is an "intentional act"); *cf. Cox*, 170 F.4th at 735 (emphasizing, "physical entry



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

into the State" including "through an agent, goods, *mail*, or some other means—is certainly a relevant contact'" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added)).

**ii. Plaintiff's Claims Arise Out of And Relate to The Inquirer's Forum Activities.**

Notably, the act of "operating a website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to satisfy" this "express aiming prong." *Herbal Brands, Inc.*, 72 F.4th at 1092 (citation omitted). The Complaint alleges, *inter alia*: (1) The Inquirer "offers its products in Washington through its website and through digital and print subscriptions," of its "nationally distributed daily newspaper" available "in digital format via its website, inquirer.com." Compl., ¶¶ 12, 41; and (2) The Inquirer "spams" and "harasses" Washington consumers by "transmitting" its deceptive marketing emails to sell subscriptions to residents of the state, Compl., ¶¶ 2, 42, 84, 92, 120; *id.* at ¶¶ 43-82 (marketing email scheme). Further, as discussed *infra* Section III(D), Plaintiff has pled that The Inquirer has actual and constructive notice, through means "peculiarly within its knowledge," that it is sending these false or misleading marketing emails to Washington residents. *Id.* at ¶¶ 83-91.

This is more than sufficient to demonstrate that The Inquirer "expressly aimed" those emails to Washington residents. Moreover, these contacts—through its interactive website and marketing emails—"clearly arise out of and relate to" its challenged conduct of spamming consumers with deceptive marketing emails, in order to sell its primary product, available through the website (inquirer.com) itself. *See Herbal Brands*, 72 F.4th at 1096; *see, e.g.*, *Briskin*, 135 F.4th at 753 (citing *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002) and noting defendant engaged in "something more" than "operating a passive website" by "running radio and print advertisements in Las Vegas"). Here, Plaintiff's claims arise out of The Inquirer's



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

mass email marketing campaign, aimed at Washington residents, who Plaintiff has further alleged that The Inquirer "allegedly knew [were] in [Washington]."*Briskin*, 135 F.4th at 760

On this point, *Mavrix* is instructive. There, an Ohio-based corporation sued a Florida corporation in the federal Central District of California for trademark infringement, and despite that *both* parties were foreign to the California forum, the Ninth Circuit found specific jurisdiction where "Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). Here, Plaintiff has pled that The Inquirer specifically "spams" and "harasses" Washington residents with its misleading marketing emails, in order to sell subscriptions of its print and digital paper, available through its *interactive* website. Compl., ¶¶ ¶¶ 2, 12, 41-84, 91-92, 120. *See Briskin*, 135 F.4th at 757 (court looks at "several factors" for the "something more," including "the interactivity of the defendant's website" and "whether the defendant 'individually targeted' a plaintiff known to be a forum resident" (citations omitted) (collecting cases)). The Complaint does not allege "random, fortuitous, or attenuated contacts," *Cox*, 170 F.4th at 735[1]—*i.e.* occasional emails sent to a handful of Washington consumers—it alleges that Defendant has "exploit[ed] the [Washington] market" with its deceptive, email marketing campaigns. *Mavrix*, 647 F.3d at 1229.

And while The Inquirer is a Philadelphia-based newspaper, it is nationally distributed, Compl., ¶ 41, and its "persistent marketing" of subscriptions "through mass email campaigns" takes place "across the United States. *Id.* at ¶ 83. This national focus weighs against The Inquirer's

[1] On this point, *Vines of Argentina, LLC v. BBI Argentina*, 2025 WL 974848 (W.D. Wash. Mar. 31, 2025) is distinguishable. There, the plaintiffs alleged that the defendants contacted U.S. customers, "including at least one" Washington consumer through a *single* (*i.e.* "lone") "mass solicitation email." *Id.* at *3.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

assertion that it is a "regional" paper. Mot., 5, 7. Indeed, its "individually targeted" emails to Plaintiff, a Washington resident, demonstrate that its intended reach is not limited to Philadelphia, or even Pennsylvania. *See Briskin*, 135 F.4th at 757.

The Inquirer points to inapposite case law, standing for the proposition there is no specific jurisdiction based on "an untargeted marketing email is insufficient to establish that the sender was expressly aiming its conduct at the forum," *Jagen Invs. LLC v. Cannon Fin. Inst., Inc.*, 2016 WL 11485896, at *6 (D. Nev. June 27, 2016), *report and recommendation adopted,* 2018 WL 4335619 (D. Nev. Sept. 11, 2018), or "an email to a generic email address." *Rice v. Karsch*, 154 F. App'x 454, 462 (6th Cir. 2005). This case law is inapposite to Plaintiff's allegations that The Inquirer "spams" and "harasse[s]" "Washington consumers" with its "persistent marketing through mass email campaigns," and that it "offers its products in Washington through its website and through digital and print subscriptions to its newspaper." Compl., ¶¶ 4, 7, 12, 83. Nor is the Tenth Circuit's opinion in *XMission* persuasive where it turned on the plaintiff's failure to show that the defendant "knew" that email recipients were located in the forum state. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 846 (10th Cir. 2020). Plaintiff has *pled* that "The Inquirer knows when it sends emails to Washington residents," including through a variety of plausible mechanisms for that actual knowledge—"means" which are "peculiarly within its knowledge." Compl., ¶ 83.

**iii. Exercise of Specific Jurisdiction Would Not Be Unreasonable Here.**

Finally, "[o]nce Plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Herbal Brands, Inc.*, 72 F.4th at 1096 (quoting *Schwarzenegger*, 374 F.3d at 802 (quotations omitted); *see also Briskin*, 135 F.4th at 751 (same). This inquiry involves a "balancing test that weighs seven factors":



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). Here, the first, fourth, sixth and seventh factors favor Plaintiff. As pled, The Inquirer's "purposeful interjection" into the lives of Washington residents, through sales of subscriptions on its website and "spamming" Washington residents, like Plaintiff, with its deceptive marketing is sufficiently extensive to find that The Inquirer has "voluntarily derived some benefit from [its] interstate activities such that [it] will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Cox*, 170 F.4th at 735. Further, because Plaintiff's "claims rest on the law of [Washington], [this Court] would provide the most efficient judicial resolution of the controversy," as well as better provide Plaintiff "convenient and effective relief." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (citation and quotations omitted). And as to any burden that The Inquirer may assert, its "extensive contacts" with Washington and the state's residents mitigates against any litigation burden here. This is especially the case where so much litigation is conducted by virtue of the very electronic and online means utilized by The Inquirer to spam Washington consumers with its misleading marketing ads. *See Ayla, LLC*, 11 F.4th at 984 (foreign corporation's "argument that it would suffer financial hardship and be unduly burdened because its cofounders would have to travel to the United States for court appearances is entitled to little weight," in light of the "contacts on which [the plaintiff's] claims are premised").

Plaintiff has pled that The Inquirer intentionally and "expressly aims" its deceptive, marketing emails to the market of Washington consumers, and in order to sell subscriptions to its



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

nationally distributed paper, available through, *e.g.*, its interactive website. These contacts with the Washington market are those which Plaintiff's claims arise from and relate to. Thus, the Court has personal jurisdiction under *Herbal Brands*, *Briskin*, and other recent, governing decisions holding that specific jurisdiction is reasonable when anchored in such allegations demonstrating "something more" than just a passive website.

In the case, however, that the Court is persuaded otherwise, Plaintiff requests the opportunity to conduct limited, jurisdictional discovery into The Inquirer's actual contacts with the market of Washington consumers. While Plaintiff has pled "something more" than mere operation of a website, accessible to Washington consumers—through intentional "spamming" of the Washington market—any finding otherwise is likewise limited by facts "peculiarly within" the knowledge of The Inquirer. Compl., ¶ 83. Plaintiff should be afforded the opportunity to discover the facts underlying Defendant's actual contacts in Washington. *Cf. Haynes N. Am., Inc. v. eManualOnline.com*, 2025 WL 1489547, at *3 (C.D. Cal. May 23, 2025) (preliminary injunction denied and plaintiff granted "expedited discovery limited to personal jurisdiction" on pleadings that, *unlike here*, merely alleged online sales to California residents).

**iv. Alternatively, the Court should allow discovery before final decision.**

If, however, the Court concludes Plaintiff has failed to make a prima facie showing of jurisdiction, still the Court should deny The Inquirer's motion without prejudice to refiling after discovery. Where "the jurisdictional facts are intertwined with the merits," such that "a decision on the jurisdictional issues is dependent on a decision of the merits," it is "preferable" that the jurisdictional determination "be made at *trial*" to avoid "the risk of prejudicing [plaintiff's] case on the merits." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 2 (9th Cir. 1977) (emphasis added). Just that prejudice threatens Plaintiff here, because jurisdiction and the merits



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

are almost entirely coextensive. CEMA liability attaches to anyone who "initiate[s] the transmission, conspire[s] with another to initiate the transmission, or assist[s] the transmission" of commercial email "[c]ontain[ing] false or misleading information in the subject line" to an email address "that the sender knows, or has reason to know, is held by a Washington resident." RCW § 19.190.020(1). As illustrated above, there is no reasonably conceivable way this prohibition could be violated without subjecting the violator to specific personal jurisdiction in Washington. Put differently, no out-of-state defendant could violate this prohibition without committing an intentional act aimed at Washington that defendant knew would likely cause harm to people living in Washington. In short, if Plaintiff wins on the merits, The Inquirer loses on jurisdiction.

Though plaintiffs in cases of intertwinement must still "establish a prima facie showing of jurisdictional facts" to ultimately defeat defendant's Rule 12(b)(2) motion, they are entitled to the support of "affidavits *and perhaps discovery materials*." *Data Disc*, 557 F.2d at 1285 n.2 (emphasis added); *see also, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous.") (quotations omitted)). In this case, it's "discovery materials" or nothing. Plaintiff is an ordinary consumer with no other relationship to The Inquirer. There is no affidavit he, or anyone like him, could execute that would speak to the details of what The Inquirer knows, infers, or ought to know about the recipients of its marketing emails.

The Court is "vested with broad discretion to permit or deny discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," discovery "should ordinarily be granted." *Id.* at 1093. A favorable exercise of discretion is warranted here. The information to be discovered—namely, The Inquirer's audience segmentation



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

and targeting efforts—is inaccessible to Plaintiff otherwise. *See Powerteq, LLC v. Moton*, 2016 WL 80558, at *3 (N.D. Cal. Jan. 7, 2016) (allowing discovery on defendant's Rule 12(b)(3) motion) (quoting *Hayashi v. Red Wing Peat Corp.*, 396 F.2d 13, 14 (9th Cir. 1968)) ("[T]he trial court may permit discovery … and indeed should do so where … the relevant evidence is peculiarly within the movant's possession."); Compl. ¶ 83.

Granting The Inquirer's Motion on the bare papers would necessarily entail a negative determination of the bulk of Plaintiff's liability theory on the strength of Plaintiff's pleadings which cannot possibly allege facts "peculiarly within" Defendant's coffers (*id.*).[2]

### B. Plaintiff's CEMA claims are not preempted.

This well-worn argument for dismissal of CEMA claims has been rejected in numerous decisions in this District and the Eastern District. *See, e.g.*, *Nike*, 816 F. Supp. 3d at 1230-32; *Harrington*, 813 F. Supp. 3d at 1220-21; *FullBeauty Brands*, 2026 WL 395677, at *4–5; *Macy's*, 2026 WL 764140, at *1; *Repperger*, 2026 WL 1157157, at *3–4; *Skechers*, 2026 WL 1392327, at *4–6; *Washington*, 822 F. Supp. 3d at 1230-31; *Hanesbrands*, 2026 WL 1161444, at *2. The Inquirer all but ignores these cases in its brief. *See* Mot., 10 n. 2.

Simply, CEMA is not preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701–7713 ("Act"). The Act's plain text, its legislative history, the Ninth Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), and cases decided before and after *Gordon* compel this conclusion. The Court need look no further than the plain text:

---

[2] If the Court allows discovery to proceed, it should not be limited to the jurisdictional issues. *See Pag-Daly City, LLC v. Quality Auto Locators, Inc.*, 2013 WL 12149704, at *2 (N.D. Cal. Jan. 25, 2013) ("Because the merits of plaintiff's claims are intertwined with facts related to jurisdiction, this discovery is not limited to jurisdictional facts."). Because, as shown above, the merits of Plaintiff's claims are inextricably intertwined with the jurisdictional issues, the line between them is blurry or illusory. Instead, the Court should honor Plaintiff's right to present her jurisdictional case "in a coherent, orderly fashion and without the risk of prejudicing [her] case on the merits." *Data Disc*, 557 F.2d at 1285 n.2.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity* ***or*** *deception in any portion of a commercial electronic mail message or information attached thereto*.

15 U.S.C. § 7707(b)(1) (emphases added). Application of this plain text to CEMA is straightforward. CEMA prohibits sending commercial email that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). By prohibiting "false or misleading" subject lines in commercial emails, *id.*, CEMA "prohibits falsity or deception" in some part of or information attached to commercial emails. 15 U.S.C. § 7707(b)(1).

The Act's legislative history supports this conclusion. The Report of the Senate Committee on Commerce, Science, and Transportation described the effect of the Act as follows: "[A] State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, *a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted*." S. Rep. No. 108-102, at 21 (emphasis added). The Report makes clear that Congress did not intend § 7707(b)(1) preemption to reach everything short of common law fraud, and indeed expressly endorses the very claims brought here: claims based on "a State law prohibiting … deceptive … subject lines … in commercial email" (*id.*)—directly contradicting The Inquirer's assertions that the CAN-SPAM exception applies only to claims sounding in common law fraud. Mot., 4, 9-11, 13-16.

Court after court, before and after the Ninth Circuit's decision in *Gordon*,[3] has concluded:

---

[3] *See, e.g.*, *Asis Internet Servs. v. Subscriberbase Inc.*, 2009 WL 4723338, at *3–4 (N.D. Cal. Dec. 4, 2009); *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009); *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 944 (N.D. Cal. 2009); *Smith v. Anastasia Inc.*, 2014 WL 12577598, at *2–3 (S.D. Cal. Sept. 15, 2014);



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

statutory and common law claims that attack "falsity and deception" (§ 7707(b)(1)) broadly in commercial email are not preempted. Attention to *Gordon*'s actual reasoning and holding, rather than loose citation to its dicta, reveals why. The question was "[w]hether the exception language of § 7707(b) permits states to prohibit e-mail activity that is *not* unfair or deceptive." 575 F.3d at 1062 n. 21. Unsurprisingly, the answer was no. *Gordon* construes CEMA's "point of origin" provision, which prohibits "misrepresent[ing] or obscur[ing] any information in identifying the point of origin or the transmission path" of commercial email. RCW § 19.190.020(1)(a); *see Gordon*, 575 F.3d at 1058. As construed by the court, it found that CEMA's *point-of-origin provision*—not the statute itself—reaches "a vast array of nondeceptive acts and practices," including "unintentional clerical errors, imperfect representations, or immaterial misstatements." *Id.* at 1059 (quotations and citation omitted).

The CAN-SPAM Act, by contrast, as interpreted in light of its text, structure, and purpose, *see id.* at 1061, does not authorize liability for "bare immaterial error," *id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006)), or "immaterial inaccuracies or omissions." *Id.* at 1062. Rather, the Act restricts state regulation to the field of "traditionally tortious or wrongful conduct." *Id.* (quoting *Omega*, 469 F.3d at 354).

Under this materiality standard, the plaintiff's claims were preempted. The Ninth Circuit found "nothing inherently deceptive" about "fanciful" domain names, *Gordon*, 575 F.3d at 1062, 1064, and rejected an inapposite argument that defendant's or a client's full name must "expressly

---

*Wagner v. Spire Vision*, 2014 WL 889483, at *3–4 (N.D. Cal. Mar. 3, 2014); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122 (Cal. Ct. App. 2012); *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 27 (Cal. Ct. App. 2011), Indeed, one court *reversed* its prior decision in light of *Gordon*. *Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010) (vacating pre-*Gordon* decision) (plaintiff "not required" to "allege he relied to his detriment" on false or misleading statement to avoid preemption.).



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

appear" in "from" fields. *Id.* So *Gordon* focused on the materiality of the alleged deception, and on that question, the plaintiff's claims failed.

*Gordon* and the cases applying it thus explain the import of "traditionally tortious or wrongful conduct," 575 F.3d at 1062, in the preemption analysis, and give the lie to The Inquirer's characterization of Plaintiff's CEMA claims as attempts to impose "strict liability." *See* Mot., 2, 11, 13, 22. The court invoked "traditionally tortious or wrongful conduct" to emphasize that the exception to CAN-SPAM preemption for state laws prohibiting "falsity *or* deception" does not encompass "liability for immaterial inaccuracies or omissions." *Id.* at 1062. It did not make any findings on, offer any analysis regarding, or even *mention* "common law fraud" in its discussion of the materiality requirement for the exception to CAN-SPAM preemption. *See generally Gordon*, 575 F.3d 1040. As the court in *Consumerbargaingiveaways* reasoned: use of the *disjunctive* references to "falsity *or* deception" "suggest[s] [a] broader application," not one "limited *just* to common-law fraud and other similar torts." 622 F. Supp. 2d at 942.

Thus, under the Ninth Circuit's governing decision in *Gordon*, a defendant simply must show it didn't do anything *wrong* to merit preemption, in light of the state standard to be applied to its conduct, viewed against the backdrop of what has traditionally been considered wrongful.

**i. The Inquirer's deceptions are more than bare immaterial errors.**

The only question, therefore, is whether it is "apparent from the face" of Plaintiff's Complaint, *Sams*, 713 F.3d at 1179, that the misrepresentations she complains of are merely "bare immaterial error[s]." *Gordon*, 575 F.3d at 1061 (quotations omitted). It is not. Plaintiff is not complaining of "fanciful" domain names or "from" fields that fail an invented "labeling requirement." *Id.* at 1063–64. To the contrary, Plaintiff complains of The Inquirer's barrage of emails laden with false subject lines—*i.e.*, its false time-scarcity tactics—that are material to the



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

behavior of ordinary consumers.

As alleged, "[f]alse time scarcity claims harm consumers by manipulatively distorting their decision-making to their detriment." Compl. ¶ 37. As one report cited in the Complaint concludes, "[f]alse or misleading scarcity claims can change the behaviour of consumers." Compl., ¶ 32 (citing U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 27 (2022)). Specifically, "[f]alse scarcity claims are psychologically effective because, as 'considerable evidence' suggests, 'consumers react to scarcity and divert their attention to information where they might miss opportunities.'" Compl. ¶ 34.

All of this accords with the well-worn federal law of materiality. "Whether in tort or contract law," materiality focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (applying wire fraud statute). A fact is material "if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citation omitted). Representations about the timing and duration of sales and discounts are, at bottom, representations about prices. If a consumer is faced with "🎉 Happy Labor Day! Sale ends today!" or "🛑 $1/WEEK for 1 YEAR ends today! 🛑" or "🚩 [24 HOURS LEFT] 25¢ a month for 6 months 🚩" the consumer must decide whether to take advantage of the deal by purchasing before it purportedly "ends" or the "hours" out, after which she loses the opportunity. Compl., ¶¶ 49-52, 63-65, 69-71; *see id.* at ¶¶ 43-82. And price is obviously a material fact—perhaps *the* material fact—affecting the behavior of consumers. *See* Compl. ¶¶ 33-36. If a consumer is in the market for a product or products she believes will cost more tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

that the price will be less if she buys it today.

The Inquirer's materiality assertions have nothing to do with that requirement. Mot., 1-3, 11-14. *First*, it points to no apposite support for the argument that Plaintiff must make a purchase. Mot., 11-14 (citing *Martin v. Miller*, 24 Wash. App. 306 (1979)) (common law fraud decision issued before enactment of CEMA).

*Second*, The Inquirer aptly points to cases that stand for the proposition that "a misrepresentation is material if it concerns a matter to which a reasonable person would attach importance in determining his or her choice of action." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n. 5 (2016) (cited by Defendant) (citation and quotations omitted); *see also Kousisis*, 145 S. Ct. at 1396 (same). And indeed, this State's high court has already found that CEMA focuses on "representations *of fact*—like *the duration or availability of a promotion*, its terms and nature, the cost of goods" that are the kinds of "*facts* [that] *Washington residents would depend on in making their consumer decisions*." *Brown*, 4 Wash. 3d at 596 (emphasis added). So The Inquirer's misrepresentations regarding the "duration or availability" or the "terms" of a sale, discount or promotion, *are* matters on which "a reasonable person would attach importance in determining his or her choice of action." *Universal Health Servs.*, 579 U.S. at 193 n. 5. The Inquirer further ignores *Brown* by asserting that materiality is unconcerned with an "email sitting in an inbox." Mot., 1, 12. As the court made clear: CEMA seeks "to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails" by "targeting an e-mail's header and subject lines: *the two pieces of information consumers first glean when faced with the choice of deleting a message or engaging with its content*." 4 Wash. 3d at 590–91 (emphasis added). Simply put, the header can deceive all on its own, as the email "sits" in the inbox.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

*Finally*, The Inquirer's *fraud* cases are inapposite here, and the court's decision on the CPA claim in *Brummett* largely turned on the plaintiff's failure to "target the creator of this alleged deception," who was not the defendant. *Brummett v. Washington's Lottery*, 171 Wash. App. 664, 678 (2012) (cited by Defendant). Moreover, the single-sentence finding that the phrase "going fast" was not materially deceptive, *id.*, is refuted by the later holding, in *Brown*, that "'representations of fact[s]–*like the duration or availability of a promotion*. . .' are subject to CEMA's subject-line standards." *Harrington*, 813 F. Supp. 3d at 1220 (quoting *Brown*, 4 Wash. 3d at 595–96).

The Inquirer is a "sophisticated commercial enterprise" that has "engaged in persistent marketing through mass email campaigns across the United States." Compl. ¶ 83. Its email marketing platform ("Salesforce Marketing Cloud") enables it to, *inter alia*, track how many recipients engage with its marketing materials and to what extent. *See id.* ¶ 87. And email subject lines offer limited space within which The Inquirer can communicate "above the fold" messages that come to consumer attention even if the emails are immediately deleted or their contents ignored. Why, then, would The Inquirer choke its consumers' inboxes like coffee grounds in a clogged sink with email after email announcing "Sale ends today!" or "24 HOURS LEFT" or "ENDING NOW" (Compl., ¶¶ 49-52, 69-71, 73-75) if those representations constitute mere immaterialities? The only plausible answer is, of course it would not. And The Inquirer's false-urgency tactics work because they exploit well documented features of consumer psychology and behavior. *See id.* at ¶¶ 30-38. In other words, The Inquirer's tactics work because they misrepresent facts to which consumers "attach importance." *Kousisis*, 145 S. Ct. at 1396.

In any event, materiality is a complex mixed question of law and fact "typically … resolved by juries." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Any doubts as to the



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

materiality of The Inquirer's misrepresentations are to be doubly resolved against The Inquirer: once because it is not Plaintiff's burden to plead materiality, but The Inquirer's burden to show Plaintiff has pleaded herself out of court with immaterialities, *see Sams*, 713 F.3d at 1179; and twice because Plaintiff should be afforded the benefit of fact and expert discovery to demonstrate the plausible inference that The Inquirer's misleading subject lines impact consumer behavior.

**ii. The Inquirer's Non-Existent Preemption Standard Does Not Apply.**

Having invented a non-existent "common law fraud" pleading requirement under *Gordon*, The Inquirer next asserts that Plaintiff's CEMA claim must meet its elements. Mot., 14-16. But the Ninth Circuit's reference to "traditionally tortious or wrongful conduct" never once invokes the elements of common law tort theories, like, *e.g.* fraud. As described *supra* Section III(B)(i), *Gordon* and its progeny stand for the incorporation of *materiality* under common law tort theories to invoke preemption. They do not stand for an explicit adoption of the elements of a *different* law or standard other than that invoked by the exempted state law itself. *Gordon*, at 575 F.3d at 1063. As described by the court, the CAN–SPAM Act "left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Id.* So, the *states* get to enact laws that *extend* traditional prohibitions against fraud *and* deception; the latter, of course, being substantively discrete from the former.

Again, The Inquirer is wrong that Plaintiff is required to plead the elements of a common law fraud claim to survive preemption,[4] Mot., 14-16, including "intent." *Id.* at 10. *See Wright*,

[4] The Inquirer's effort to invoke common law fraud turns on misrepresenting the *Gordon* decision and relying on cases about fraud. Mot., 13-16 (citing, *e.g.*, *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wash. 2d 157, 166-167 (2012) (under *fraudulent inducement* claim, court found the alleged misrepresentations "*not relevant*"); *Martin v. Miller*, 24 Wash. App. 306, 309 (1979) (on *fraud claim*, plaintiffs must show that "representations were material to the plaintiffs' decision to enter into . . . agreement"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 (9th Cir. 2023) (quoting the "procedural history" portion of a decision regarding a



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

406 P.3d at 1153–55 (elements of CPA and CEMA claims do not include intent). Nonetheless, a demonstrably reasonable inference from pleadings that it asserted "Sale ends today!" or "24 HOURS LEFT" or "ENDING NOW" as to deals it continued the next day is that The Inquirer *knew* the deal would be "extended." Compl., ¶¶ 43-82. Otherwise, how could it systematically implement the very deals it was advertising, and then advertise those deals to consumers across the U.S.? Of course, even under heightened fraud claims—*not applicable* here—one need only plead a "strong inference" of knowledge. *See, e.g.*, *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). This makes sense: at the pleading stage, a plaintiff has little-to-no way of accessing what the defendant *knows*. So The Inquirer is wrong even under the standard for pleading fraud—an inapposite standard on Plaintiff's CEMA and CPA claims, which do not require intent. *Wright*, 406 P.3d at 1153–55.

And again, because *Gordon* and the CAN-SPAM exception to preemption *do not impose* common law fraud elements on CEMA, there is no requirement to plead reliance here.[5] As the court made clear in *Asis Internet Servs. v. Subscriberbase*:

> This Court agrees with those courts that have read the terms "falsity or deception" broadly, thereby saving more than just common law fraud claims and narrowing the preemptive effects of the CAN–SPAM Act. In particular, this Court agrees that Congress's use of the word "fraud" elsewhere in the section, and the CAN–SPAM Act's references to the word "deception" as used in the FTC Act,

---

False Claims Act challenge, where the jury was asked to assess, *inter alia*, "whether 'the false or fraudulent aspect of the claim' was 'material to [the plaintiff's] decision-making'"); *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009) (on *fraud* claim, allegation not sufficient to meet *inapposite* reliance requirement)).

[5] *See, e.g.*, *Asis Internet Servs.*, 2009 WL 4723338, at *3 (no "need to plead reliance and damages in order to avoid preemption"); *Asis Internet Servs*, 617 F. Supp. 2d at 993 ("declin[ing]" to "restrict . . . 'falsity or deception' to encompass only common-law fraud"); *Consumerbargaingiveaways*, 622 F. Supp. 2d at 944 (same); *Smith*, 2014 WL 12577598, at *2–3 (same); *Wagner*, 2014 WL 889483, at *3–4 ("showing of reliance and damages" is "not necessary"); *Hypertouch*, 123 Cal. Rptr. 3d at 27 (same); *Hoang*, 2010 WL 1340535, at *4 ("not required" to "allege he relied to his detriment" on false or misleading statement).



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

> invite this broader reading. Plaintiffs therefore do not need to plead reliance and damages in order to avoid preemption of their claims.

2009 WL 4723338, at *3–4 (citation omitted). As amply described *supra*, *Gordon*'s focus on materiality aligns with these courts' findings that the exception for "falsity or deception" prohibitions does not equate to "common law fraud," a term never once referenced by *Gordon*—notwithstanding The Inquirer's considerable effort to assert otherwise.

Nor should the Court accept The Inquirer's invitation to read into *Gordon* the findings and conclusions made in *Omega*. Throughout its brief, The Inquirer consistently quotes its favored (*Omega*) opinion, while misrepresenting that findings and statements in that case were co-signed by the court in *Gordon*. *See, e.g.*, Mot., 8, 10, 13, 20. While the Ninth Circuit extensively reviewed the decision by its sister circuit court, it did not wholly adopt the opinion or align with statements regarding, *e.g.*, reliance under fraud and "strict liability standard[s]" that The Inquirer attempts to associate with *Gordon*. Indeed, *Gordon* never once mentions fraud "reliance" or "strict liability." *Compare* Mot., 14-17 *with Gordon*, at 575 F.3d at 1061-65.

**C. To the Extent It Applies, Plaintiff's Pleadings Satisfy Rule 9(b).**

The particularity provision of Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted). It is doubtful that Rule 9(b) applies here. This is not a complex healthcare fraud matter under the False Claims Act. The rule applies when "alleging fraud" to "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). But, as explained above, Plaintiff merely has to allege "falsity" or "deception."

Even presuming that Rule 9 applies here (it does not), the Complaint readily clears Rule 9(b)'s bar because it sufficiently alleges the necessary particulars:

*Who*: The Inquirer, *See, e.g.*, Compl., ¶ 11-12, 41-82.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

*What*: Created false senses of urgency and time pressure to induce Plaintiff and others to buy its products immediately. *See, e.g., id.* at ¶¶ 3–7, 41-82.

*When*: on dates that include September 4, 2023, September 19, 2023, January 23, 2024, January 24, 2024, February 20, 2024, February 21, 2024, March 12, 2024, July 16, 2024 and July 10, 2025, as to Plaintiff, *id.* at ¶¶ 93-102, and on numerous specified dates, as to putative class members. *Id.* at ¶¶ 43-82.

*Where*: Minimally, at Plaintiff's email account, *id.* at ¶¶ 92-104, and on specific dates, as to putative class members' accounts. *Id.* at ¶¶ 43-82.

*How*: By email subject lines containing identified false statements of fact as to the duration and availability of a promotion. *Id.* at ¶¶ 43-82.

Plaintiff has met the Rule 9(b) requirement of providing "enough detail to give [defendant] notice of the particular misconduct which is alleged to constitute the fraud [ ] so that [it] can defend against the charge and not just deny that [it has] done anything wrong." (citation omitted). *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010). Nothing more is required.

Plaintiff's CEMA claim does not turn on proof that The Inquirer's spamming scheme purveyed actually false information, even if falsity is inevitably shown. It cannot re-package these claims—asserting "false or misleading information in the subject line[s]" of its emails, RCW § 19.190.020(1)(b)—as "sound[ing] in fraud." As noted by one of its cases, a statutory claim "sounds in fraud"—subjecting the claim to Rule 9(b)—"by specifically alleging fraud, or by alleging facts that *necessarily constitute fraud* (even if the word 'fraud' is not used). *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003) (emphasis added).

In short, Rule 9(b) doesn't apply here. If it does, it is satisfied. *See Nike*, 816 F. Supp. 3d at 1232-33.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

### D. Plaintiff Has Sufficiently Pled The Inquirer's Knowledge of Email Recipients' Washington Residency.

The Inquirer's assertion that Plaintiff did not allege its knowledge of email recipients' Washington residence fails. Mot., 17-20. It paints the pleadings as "speculation," ignoring the rule that the Court must draw "all reasonable inferences in favor" of the pleadings. *Littlejohn*, 2024 WL 4451955, at *3. The Complaint includes extensive allegations that as a "sophisticated commercial enterprise," The Inquirer knows of email recipients' Washington residency through, *e.g.*, tying email addresses to online purchases; tracking IP addresses of devices who open its emails; the program ("Salesforce Marketing Cloud") used to manage its email campaigns; purchasing consumer data from brokers, who link emails to locations; and through "identity resolution" services, that connect emails to location. Compl., ¶¶ 83-91. At the pleading stage, this is more than enough to allege knowledge. *See FullBeauty*, 2026 WL 395677, at *3 ("FullBeauty cites no authority that would permit the Court to disregard the allegations of the operative pleading, to draw inferences against Kempf, or to consider contradictory facts or technological information outside the Amended Complaint.").

Here, Plaintiff have plausibly pled The Inquirer's "reason to know" *and* actual knowledge of the Washington residency of email recipients. *First*, Plaintiff allege that The Inquirer is "engaged in persistent marketing through mass email campaigns across the United States," the volume of which puts it "on notice" that Washington residents receive its emails. Compl, ¶¶ 83-84. The Inquirer's "notice" of recipients' residency *is* the "reason to know" that information, contrary to The Inquirer's assertions otherwise. Mot., 19-20. Second, Plaintiff have pled that The Inquirer uses "Salesforce Marketing Cloud" to manage these mass email campaigns—a program that "collect[s] and track[s] detailed data about the behavior of its email recipients, including open and click-through rates, as well as 'geographical data'"—an allegation of *actual* knowledge. *Id.*



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

at ¶ 87. These particularized pleadings go straight to the question of The Inquirer's knowledge of email recipients' residence—thus reaching (even exceeding) the plausibility threshold.

Moreover, the numerous other means identified by Plaintiff by which The Inquirer "may" identify the location of email recipients are specifically alleged (*i.e.* "IP addresses," [6] "commercial data brokers," "identify resolution" services) and tied to the "highly probable" reality that: "a seller of The Inquirer's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations." *Compare id.* at ¶¶ 85-90 *with id.* at ¶ 91.

Plaintiff is not requiring inferential leaps here; to the extent that any inference is required on these pleadings, it is a reasonable one. *Littlejohn*, 2024 WL 4451955, at *3; *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (Plaintiff "not expected to plead with specificity the defendant's state of mind"). As Plaintiff further pleads, the "means" by which The Inquirer knows about the Washington residence of Plaintiff and other recipients of its deceptive emails is information "peculiarly within its knowledge." *Id.* at ¶ 83.

It is worth noting that the statute itself provides for The Inquirer's constructive knowledge, where the "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW § 19.190.020(2). Plaintiff has pled The Inquirer's constructive knowledge, Compl., ¶ 90; and all reasonable inferences from these pleadings must be drawn in Plaintiff's favor. *Littlejohn*, 2024 WL 4451955, at *3. Plaintiff has alleged that The Inquirer knew it was emailing Washington residents.

### E. Plaintiff has Pled Damages Under the CPA and *Wright*.

---

[6] The Inquirer questions the reliability of IP addresses—*one* method pled by Plaintiff—to determine location. Mot., 18. But its cases do not constitute *evidence* that IP addresses do not reliably geolocate devices.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

The Inquirer offers a cursory argument that Plaintiff cannot seek statutory damages without having pled that The Inquirer engaged in phishing. It points to the Supreme Court of Washington's *en banc* decision in *Wright* for this proposition. Mot., 20-21. And while *Wright* does conclusively answer this question, its holding does not support The Inquirer's proposition. As pled here, Plaintiff's meritorious CEMA claim entitles him to injunctive relief, and it is under his *per se* CPA claim that Plaintiff may seek the "automatic damages" afforded under CEMA's liquidated damages provision. *Wright*, 406 P.3d at 1151, 1154-55; *see* Comp., ¶ 122 (injunctive relief under CEMA); ¶ 132 (*e.g.*, statutory damages under CPA).

In *Wright*, the state's high court answered *two* certified questions: (1) whether a plaintiff has "a private right of action for damages (*as opposed to injunctive relief*) directly under [CEMA]"; and (2) whether CEMA's "liquidated damages provision . . . establish[ed] the causation and/or injury elements of a claim under" the Washington CPA, "as a matter of law." 406 P.3d at 1150 (emphasis added). The court's answer to these *two* questions directly undermines The Inquirer's assertion that Plaintiff must allege phishing to have a claim for damages. While true, the *Wright* court did hold that a direct, private action under CEMA for damages is limited to "phishing violations" (citing RCW 19.190.080; RCW 19.190.090). As to the *second* question, however, the court made clear: "We also conclude that while the plain language of CEMA's liquidated damages provision does not explicitly replace the causation or injury elements of a CPA claim, because the provision provides automatic damages for violations without condition, injury and causation do not need to be proved to receive damages." *Id.*

This holding, under the second certified question, stands for the proposition that a sufficiently alleged (and ultimately, proven) CEMA violation establishes a *per se* violation of the CPA. *Id.* at 1153-55 (all five CPA elements met through CEMA violation). Thus, having



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

sufficiently pled his CEMA claim, Plaintiff's "damages for [those] CEMA violations are *automatic* under the CPA." *Id.* at 729 (emphasis original). Thus, in answering second the certified question (*i.e.* whether CEMA's "*liquidated damages provision*" established *per se* causation and injury under the CPA, *id.* at 722), the court "conclude[d] that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law. The answer to the second certified question is yes." *Id.* at 732 (emphasis added). And aligned with *Wright*, Plaintiff has pled, *e.g.*, "liquidated damages of $500 per violation," for The Inquirer's "*violation of the CPA*." Compl., ¶ 132. Put another way, Plaintiff has properly pled statutory damages available under the *per se* application of the CPA and *Wright*. The Inquirer's argument has no merit.

**F. The Inquirer's Attempt to Excise Damages Should be Rejected.**

Finally, courts are clear that it is "premature to strike or dismiss the request for treble damages prior to further development of the factual record on the issue." *Daniel v. Lennar Corp.*, 2019 WL 8194735, at *5 (C.D. Cal. Oct. 16, 2019) ("[W]hen a plaintiff states a claim, the appropriate form of relief is not to be decided upon a motion to dismiss." (citations omitted)); *see also Shade v. Gorman*, 2009 WL 196400, at *2 (N.D. Cal. Jan. 28, 2009) (dismissal of actual damages claim and injunctive relief claims "premature"; noting, "[t]he complaint simply seeks actual damages to be proven at the time of trial. If plaintiff prevails on the [ ] claim, the Court will address the issue of damages at that time"). Defendant points to a statement in *Handlin v. On-Site Manager Inc.*, 187 Wash. App. 841 (2015) that, under the CPA, any failure to "show" actual damages could block treble damages, but is not a "bar to recovery." *Id.* at 849. Of course, this statement regards an *evidentiary* showing, not pleadings. Indeed, there, the court reversed and remanded dismissal, "reinstat[ing] the complaint." This challenge is not meritorious.

**G. The Inquirer's Hypothetical Damages Challenge Fails.**



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

Finally, The Inquirer skips ahead in this case to theorize about the *possibility* of a statutory damages award, in an unknown amount, as to an unknown number of class members, not yet joined to the case. Mot., 22-23. The Inquirer cites no authority whatsoever holding that CEMA's statutory damages provision facially violates constitutional due process—because none exists. *Id.* Indeed, in response to a similar argument, the Supreme Court of Washington very recently made clear:

> Old Navy seems to argue that it would be absurd to expose Old Navy to liability under CEMA if it violated CEMA's truthfulness requirements because the liability is costly . . . . This argument is unpersuasive. There is nothing absurd about holding defendants liable for violating the law. . . . Conversely, it would be absurd for us to ignore the plain meaning of subsection (1)(b) simply because Old Navy would have to pay statutory penalties if it violated the law.

*Brown*, 4 Wash. 3d at 592. Having no support for its assertion that the Court should make a constitutional finding as to *unawarded* statutory damages at this pleading stage, The Inquirer offers case law construing *awarded* damages after litigation on the merits of the plaintiffs' and class members' claims. Mot., 14-16. The Inquirer's two cases—*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1113 (9th Cir. 2022) and *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990)—both involve damage awards issued *after trial*.[7] The very standard cited by The Inquirer reflects the absurdity of applying these cases to the Complaint here: How can the Court assess "the amount of award to [ ] plaintiff" or "the total award," or compare the awards to "damage awards in similar cases" when there has been no damages award? Mot., 21 (citing *Wakefield*, 51 F.4th at 1123). Nor can there be a determination of the "nature and

---

[7] The Inquirer misrepresents the decision in *Branson v. Washington Fine Wine & Spirits, LLC*, 574 P.3d 1031 (2025). The court offered no commentary whatsoever regarding the "constitutionality of [ ] a statutory [class-wide] damages award," Mot., 15 (citing *Branson*, 574 P.3d at 1039 n. 6). Rather, the court was referring to the *defendant's position* that a particular construction of the term, "job applicant," would lead to an unconstitutionally punitive damages award, *id.*—a position the court "decline[d] to consider" while *rejecting* the argument that broad construction of the statutory language would have various deleterious effects. *Id.* at 1039.



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

persistence of the violations" or The Inquirer's "culpability" without *evidence* and a determination on the merits of Plaintiff's claims. *Id.*

The Inquirer has no basis to seek constitutional due process review now.

## IV. CONCLUSION

The Court should deny The Inquirer's motion to dismiss.

*[Counsel signatures to follow on next page.]*



CohenMalad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481 • cohenmalad.com

Date: July 20, 2026

*s/Lynn A. Toops*
Lynn A. Toops, *pro hac vice*
Natalie A. Lyons, *pro hac vice*
Ian R. Bensberg, *pro hac vice*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

*I certify that this memorandum contains 8,319 words in compliance with the Local Civil Rules.*

*s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. 46971
Raina C. Borrelli, *pro hac vice*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV, *pro hac vice*
Michael C. Tackeff, *pro hac vice*
Andrew K. Murray, *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiff*